(No. 22212.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* GEORGE DALE, Plaintiff in Error.

*Opinion filed February 23, 1934.*

DAVID A. RISKIND, ROBERT E. CHERRY, and LAWRENCE BLOOMENTHAL, for plaintiff in error.

OTTO KERNER, Attorney General, THOMAS J. COURTNEY, State's Attorney, and J. J. NEIGER, (EDWARD E. WILSON, J. ALBERT WOLL, and HENRY SEYFARTH, of counsel,) for the People.

Mr. JUSTICE SHAW delivered the opinion of the court:

On August 4, 1933, Gustav Hoeh was shot to death in front of his haberdashery store at 5948 West Division street, Chicago, in connection with an armed daylight robbery of his place of business. For this crime the plaintiff in error, George Dale, otherwise known as George Kennedy, together with Eleanor Jarman and Leo Minnecci, was indicted for murder. The case was tried before a jury in the criminal court of Cook county, resulting in a verdict and sentence of guilty as to all defendants and imposing the death penalty on Dale, who by leave of court sues out this writ of error to review that judgment.

It appears from the record that on the afternoon in question the plaintiff in error, together with his co-defendants, Mrs. Jarman and Minnecci, went to the store of the

deceased and after pretending to look at some merchandise the plaintiff in error drew a gun and informed him that it was a hold-up. A struggle ensued between Dale and the deceased, Hoeh, with Dale in front of him and Mrs. Jarman at his back. They dragged him to the sidewalk, and there, while he held his arms in the air crying for help, Dale shot him at least twice. The bullets were afterwards found at the scene of the shooting and were identified on the trial as coming from a revolver which was found in the room occupied by Dale and Mrs. Jarman. The deceased had two bullets through his body, one piercing the heart, diaphragm and stomach, leaving the body at about the level of the ninth rib, and another through the abdomen, piercing the liver and making an exit at about the level of the twelfth rib. In addition to these wounds he had abrasions on his head, indicating that he had been beaten over the head. The defendants in their own behalf told conflicting stories, attempting to make it appear that an argument had started between Dale and Hoeh at the time Dale was shopping for a shirt. Each defendant tried to make his own part in the transaction appear innocent, and Dale tried to exculpate Mrs. Jarman, with whom he was living.

The defense of Dale, who is the only one of the three sentenced to death and the only one suing out this writ of error, was committed to the office of the public defender of Cook county. Two lawyers in that office handled the defense, first Joseph P. Powers, who was in the case until after a jury had been selected and who was then permitted to withdraw on account of the death of his father, then attorney Frank Ferlic, another member of the public defender's staff, who continued and finished the trial. It is first contended by plaintiff in error that he was not accorded due process of law and that he has not received a fair and impartial trial because he was represented by counsel who was not sufficiently acquainted with his de-

fense, and therefore was not able to, and did not, adequately protect his interests during the course of the trial.

It is, of course, true, as has many times been pointed out in this court, that every defendant, guilty or innocent, has a right to a fair trial, and that this right includes a reasonable opportunity for him to acquaint his counsel with the nature of his defense and an opportunity for the attorney to prepare. (*People* v. *Shiffman*, 350 Ill. 243; *People* v. *Bopp*, 279 id. 184.) It is also true that it is only where the record shows that the trial court has abused its discretion by denying reasonable time for the preparation of the defense that a reviewing court will interfere. (*People* v. *Street*, 353 Ill. 60.) Before there can be any reversible error on account of a lack of time to prepare for trial it must appear from the record that time was asked for and that the court's refusal to give it in some way embarrassed the defendant's case or prejudiced his rights. Time to prepare for trial does not include time to concoct a non-existant defense, but only such time as may be necessary and reasonable for the preparation and presentation of whatever defense the defendant has. The two essential elements for reversal are lacking in this case, in that it does not appear that any further time was asked for nor does it appear that the defendant had any evidence or theory of defense to be presented to the jury which was not fully and adequately placed before it. There is nothing in the record to show that the case for the People could have been weakened or the case for the defendant in any way strengthened had any further time been asked for and granted. It also appears from the record that the attorneys Powers and Ferlic were both members of the public defender's staff, and that some thirteen days prior to the trial the defendant had talked to both of them in regard to his case and that Powers and Ferlic had talked about it with each other, and Powers had advised Ferlic of the nature of the case and the character of the defense.

It is furthermore to be noted from the record that Ferlic capably presented the defense, and on the face of the record no weight can be given to any contrary contention.

It appears that after the killing the defendants Dale and Jarman, who occupied one room, moved twice. At the time of the murder they were living on West Madison street, and within the week following they moved from there to an address on Chicago avenue and later to an address on Drexel avenue, at which place they were arrested. During this period of time the police officers of the city of Chicago were actively searching for them. The police knew that the murder had been committed. They had accurate descriptions of the defendants from many eye-witnesses and knew that these defendants were the guilty parties. Having located them the officers broke into the premises and arrested the two defendants at the points of guns.

Twelve officers were engaged in the raid on the apartment, and those who testified at the trial said that they had information the defendants were to be found at that place. They broke in the door, and after arresting the defendants Jarman and Dale found a package containing four revolvers under a bed. Neither of these defendants claimed ownership of them. These guns were all produced at the trial in the presence of the jury, and one of them, which was identified as being the gun which had fired the fatal shots, was admitted in evidence. It is contended on behalf of plaintiff in error that it was prejudicial to his rights to have all of these guns exhibited to the jury. This was not error, as we have repeatedly held that it is competent to prove that a person accused of crime possessed a weapon suitable for the commission of that crime at the time of his arrest even though no claim is made that he actually used it on the occasion in question. (*People* v. *Lenhardt,* 340 Ill. 538; *People* v. *Powloski,* 311 id. 284; *Williams* v. *People,* 196 id. 173; *Peo-*

*ple* v. *Allegretti,* 291 id. 364; *People* v. *Maciejewski,* 294 id. 390; *People* v. *Cunningham,* 300 id. 376.) It is contended that if the proper motion had been made at the proper time this evidence would have been suppressed, and that if the plaintiff in error had been properly defended at the trial such a motion would have been made. This is not true, as the arrest of the defendants and the taking of the guns were entirely lawful.

It is next argued on behalf of Dale that it was error for the State to prove by some eleven witnesses that the three defendants had been seen together at various times and places prior to the day of the fatal shooting. It is his contention that the purpose of the State was to establish indirectly that the defendants had been guilty of other crimes. No such evidence was admitted, however, the State limiting itself to proof that the defendants had been seen together at various places and that at one of those places Dale had a gun in his possession. This proof was competent in rebuttal, as Dale had testified that on the day in question he did not have a gun and that he had not had one. There is nothing in this evidence of which plaintiff in error can complain.

Objection was made at the trial, and error is urged here, on account of the admission in evidence of certain bullets found at the scene of the crime by a police officer. It is argued that the proof is insufficient concerning the custody of these bullets during the interim. The record shows that the officer who found the bullets put his own distinguishing mark on them at the time they were found and he identified them at the trial. The ballistic expert testified that they were fired from one of the revolvers found in the Dale and Jarman apartment, and we find no error in their admission in evidence.

Finally, it is argued that the State's attorney in his closing argments appealed to the passions and prejudices of the jury, and that the case should be reversed on that ac-

336

count. We have carefully examined the record in this respect and can find nothing of which complaint may justly be made.

The plaintiff in error has had a fair trial in accordance with due process of law. No objection is presented to us either in regard to the instructions given to the jury or to the instructions refused to be given, and we can find no reason for interfering with the verdict of the jury and the sentence of the trial court. The judgment is therefore affirmed, and the 20th day of April, 1934, is fixed as the date for carrying into effect the original judgment and sentence of death.

*Judgment affirmed.*