THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JOSEPH BURBA, Defendant-Appellant.

First District (2nd Division)   No. 84—1334

Opinion filed May 14, 1985.—Rehearing denied July 16, 1985.

Robert B. Rosen, of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat, Kevin Sweeney, and C. Jeffrey Thut, Assistant State's Attorneys, of counsel), for the People.

JUSTICE PERLIN delivered the opinion of the court:

Defendant, Joseph Burba, was charged by information with home invasion (Ill. Rev. Stat. 1981, ch. 38, par. 12—11(a)(2)); attempted rape (Ill. Rev. Stat. 1981, ch. 38, par. 8—4); and deviate sexual assault (Ill. Rev. Stat. 1981, ch. 38, par. 11—3). Defendant raised the affirmative defense of voluntary intoxication (Ill. Rev. Stat. 1981, ch. 38, par. 6—3). Following a jury trial, defendant was convicted of attempted rape and deviate sexual assault and was found not guilty of home invasion. He was sentenced to extended terms of 35 years for deviate sexual assault and 20 years for attempted rape, to be served concurrently.

Defendant appeals, presenting the following issues for review: (1) whether the trial court erred in denying defendant's motion for a continuance on the basis that his expert witness was unavailable; (2) whether the trial court erred in allowing into evidence for impeachment purposes defendant's prior burglary convictions; (3) whether certain remarks of the prosecutor in closing argument constituted reversible error; (4) whether defendant was proved guilty beyond a reasonable doubt; (5) whether the trial court failed to order a "timely" presentence report; (6) whether the trial court failed to consider factors in mitigation in sentencing defendant; and (7) whether the trial court erred in imposing extended-term sentences.

Defendant was arrested on November 26, 1982; his case was on the trial court's call for two years before coming to trial. Prior to trial defendant had been granted two continuances: one on March 13, 1984, for unspecified reasons; a second on April 13, 1984, because defendant's expert witness, Dr. Sellers, was not available to testify. On April 23, 1984, the date set for trial, after the *voir dire* of jurors had begun, defendant again sought a continuance because Dr. Sellers was unavailable. The trial court denied the motion for a continuance. Defense counsel stated that he had contacted the Alcohol Treatment Center at Ingalls Hospital and had been told that a doctor would be available to testify as an expert for defendant, but that he had not yet spoken with that doctor.

The court then stated:

"Well, all right, we will let the State know as soon as possi-

ble. If I feel that they need time, reasonable time to get them an expert, I will give them additional time, but I expect both sides to be as diligent as possible. We do have a jury in the box. I can see giving this a one day delay, if necessary, or whatever else is close to that. If either side has difficulty with their witnesses, but be diligent please."

The next day, April 24, 1984, the court allowed defendant to amend his discovery answer to add the name of Dr. Shumak of Ingalls Hospital as defendant's expert witness. The defense did not request additional time to prepare that witness. When trial resumed on April 25, 1984, the defense called, not Dr. Shumak, but Dr. Abrams of Northwestern University Hospital as its expert witness. The defense did not request additional time to prepare Dr. Abrams for trial.

On April 24, 1984, the defense moved to bar the introduction into evidence of defendant's prior burglary convictions on the basis of inadequate notice to the defense as well as prejudice to the defendant. The court denied the motion.

At trial, the complaining witness (AC) testified: She was 64 years of age at the time of the offense and lived alone on Springfield Street in Chicago. On November 26, 1982, she left her home shortly after 9:30 p.m. to look for her dog. As she stood "in the alley behind an apartment building," the defendant approached her and began a conversation. He continued to walk with her down the alley. He did not slur his words, stumble or lean on her for support. When she reached her home, she told the defendant not to come into her yard, but "to remain outside of her gate." However, after she unlocked her door, defendant forced his way into her house. Defendant dragged her into the kitchen, where she picked up the telephone receiver. Defendant replaced the telephone and told her that if she resisted him he would break her arms. He dragged her into the bedroom and threw her onto her bed with her head hanging over the footboard. Defendant removed her dentures and placed his penis into her mouth. While holding her down with one arm, he removed her slacks and began to remove her pantyhose with the other. There was a knock at the door, and the victim was able to twist her head away from defendant's penis. Defendant began to leave the house.

On cross-examination, AC testified that when she met defendant in the alley, he told her that he was returning from a tavern; she did not remember stating at a preliminary hearing on November 29, 1982, that defendant told her "he drank a lot" or that when she en-

countered defendant he "appeared to be intoxicated."

AC's neighbor, Marie, testified: She lived next door to AC. On November 26, 1982, she "heard loud noises" at about 10:30 p.m. She looked in AC's kitchen window and saw defendant attacking AC. She then telephoned the police.

Brian Burke testified that he is a Chicago police officer. On November 26, 1982, he responded to a call of "home invasion in progress" at AC's address. When he and his partner reached the house, defendant ran out the side door. Defendant's pants were open, and he appeared "calm." When Burke's partner grabbed defendant, defendant stated, "Everybody is all right." When Burke entered the house, AC told him, "I have been attacked." On cross-examination, Burke stated that when they placed him under arrest, defendant began to struggle with the police officers.

Defendant testified as follows: In 1981 he had pleaded guilty to three "garage burglaries." Over the past several years he had "used alcoholic beverages" as well as "PCP, cocaine, valium, and heroin." He had used alcohol since his junior year in high school. He had begun using other drugs while in the army. He believed he was "in need of" a drug abuse program.

On November 26, 1982, he had gone to visit his mother at about 11:30 a.m. He drank a quart of beer en route to his mother's house. He ate while at his mother's. At approximately 3:30 p.m. he left for a tavern called "T.R.'s Pub." He had "about ten beers and eight to ten mixed drinks" at the tavern. He also ingested "ten to fifteen cents worth" of the drug PCP while at the tavern. He ate no food after leaving his mother's home. The last thing he remembered before waking up in a jail cell the next day was playing "the baseball machine" at the tavern.

On cross-examination, the defendant testified: Although he had been using drugs for nine years, he had never before sought help for his problem. On other occasions when he used PCP, he had "sometimes been unable to recall what happened." He did not remember ever seeing AC before trial. He did not recall attacking her.

It was stipulated that defendant was 28 years of age on the date of the offense and that at 1:30 a.m. on November 27, 1982, at Little Company of Mary Hospital, defendant's blood was analyzed and found to contain "one hundred eighty-six milligrams per deciliter of ethanol." His blood was negative for "amphetamines, barbiturates, benzothiadiazines, cocaine, methadone, opiates, propoxyphene, and phenothiazines."

Dr. Richard Abrams testified as an expert witness for defendant

as follows: Based on the stipulated "blood level" of the defendant at 1:30 a.m., he estimated that defendant's "blood level" at approximately 10 p.m. the night before would have been "two hundred sixty-five." In Dr. Abrams' professional opinion, the defendant "was not capable of knowing what he was doing or acting intentionally with that blood level."

On cross-examination, Dr. Abrams testified: He had never before seen, examined or spoken with the defendant. He had been contacted one day earlier by defense counsel with regard to this case. He had been acquainted with defense counsel "off and on for about a year or two." He did not know what crime defendant was charged with committing. He did not know defendant's drinking habits, and had based his opinion on a "normal physical standard." If he had actually been acquainted with defendant and his drinking habits, it could have "to some extent" affected his opinion of defendant's ability to know what he was doing on the night of the offense. However, it was "most unlikely" based on defendant's stipulated blood level that defendant was "in control of his faculties" at the time of the attack.

In rebuttal, the State called Officer Robert Anderson of the Chicago police department, who testified as follows: He was working with Officer Burke on the night of defendant's arrest. When he arrived at the side door of AC's house, he saw defendant pulling up his pants and "stuffing his shirt into his pants." When he stopped defendant from leaving, defendant stated, "That's okay. Everything is cool. There's no problem here." Defendant was calm until the police officers tried to handcuff him. Although "four or five" officers had to struggle to handcuff defendant, he was "calm" at the police station. He answered questions coherently and did not slur his words. Anderson had, in his 14 years as a police officer, seen, arrested, or had contact with "thousands" of people who were drunk. In his opinion, defendant "had been drinking."

The prosecution published to the jury that on February 4, 1981, the defendant had been convicted of three burglaries.

In closing argument the prosecution stated:

> "the fact he [Dr. Abrams] gets up here and said he's a doctor and he's going to tell you all about it, that doesn't mean you have to believe him. And why is he here? He's a friend of one of the defense attorneys. Strike that."

Following an objection by defense counsel, the prosecution continued:

> "Withdraw that, Judge. He knows one of the defense attor-

neys and has known him for a period of time. The defense attorney called him yesterday morning and asked him to come in. The doctor cleared his schedule to be here today to testify."

The jury was instructed that "an intoxicated person is criminally responsible for his conduct unless his intoxication renders him incapable of acting knowingly or intentionally."

The jury found defendant guilty of attempted rape and deviate sexual assault, and not guilty of home invasion. On May 23, 1984, following a sentencing hearing, the trial court entered extended sentences of 35 years for deviate sexual assault and 20 years for attempted rape, to be served concurrently.

I

■ Defendant first contends that the trial court erred in denying defendant's motion for a continuance in order to obtain an expert witness. With regard to the granting of a continuance in such a situation, our supreme court has stated:

"It is, of course, true, as has been many times pointed out in this court, that every defendant, guilty or innocent, has a right to a fair trial, and that this right includes a reasonable opportunity for him to acquaint his counsel with the nature of his defense and an opportunity for the attorney to prepare. [Citations.] It is also true that it is only where the record shows that the trial court has abused its discretion by denying reasonable time for the preparation of the defense that a reviewing court will interfere. [Citation.]

Before there can be any reversible error on account of a lack of time to prepare for trial it must appear from the record that time was asked for and the court's refusal to give it in some way embarrassed the defendant's case or prejudiced his rights." *People v. Dale* (1934), 355 Ill. 330, 333, 189 N.E. 269.

It is well established that whether to grant a continuance is a matter within the sound discretion of the trial court (Ill. Rev. Stat. 1981, ch. 38, par. 114—4(e); *People v. Clark* (1956), 9 Ill. 2d 46, 137 N.E.2d 54; *People v. Thibudeaux* (1981), 98 Ill. App. 3d 1105, 424 N.E.2d 1178), to be determined according to the facts and circumstances surrounding the request. (*People v. Clark* (1956), 9 Ill. 2d 46, 137 N.E.2d 54.) That determination will not be disturbed unless it appears that the denial of a continuance impeded the accused's preparation of his defense or prejudiced his rights. *People v. Robin-*

*son* (1984), 121 Ill. App. 3d 1003, 460 N.E.2d 392; *People v. Petrovic* (1981), 102 Ill. App. 3d 282, 430 N.E.2d 6.

In the instant case, defendant was granted a 10-day continuance on April 13, 1984, because his expert witness, Dr. Sellers, was not available to testify. Defendant had been granted a prior continuance on March 13, 1984, although its purpose is not specified in the record. On April 23, 1984, after the jury had been impaneled, defendant again requested a continuance because Dr. Sellers was not available. The trial court denied the continuance and advised defense counsel to obtain another expert witness. At this point, defense counsel stated that he had contacted the Alcohol Treatment Center at Ingalls Hospital and was advised that a doctor would be available to testify for defendant, although he had not yet talked to such doctor. The court then indicated clearly that, if necessary, a "one day delay" or "whatever else is close to that" would be available if "either side has difficulty with their witnesses."

On April 24, 1984, defense counsel moved to amend his answer to add Dr. Shumak of Ingalls Hospital as defendant's expert witness. Defendant's counsel requested no additional time to prepare the witness. On April 25, 1984, the defense called Dr. Abrams of Northwestern Hospital as its expert witness. Again, no additional time was requested for preparation.

Based on the hypothetical question presented to him, Dr. Abrams testified that defendant was incapable of acting intentionally or "knowing what he was doing" on the night of the offense. Although on cross-examination Dr. Abrams conceded that he had not personally examined defendant or familiarized himself with the facts of the case, he stated that his opinion of defendant's ability to act intentionally was based upon the defendant's "blood level" which had been stipulated to by the parties. Thus, since the "blood level" was the key factor in forming Dr. Abrams' opinion, it did not appear that greater familiarity with defendant or the case would have served to alter Dr. Abrams' opinion.

In our opinion, the trial court did not abuse its discretion in denying defendant's motion for a continuance on April 23, 1984. At that point, defendant had already been granted two continuances, one for the express purpose of obtaining the services of an expert witness. The *voir dire* of the jury had begun, and the trial court made it clear that extra time to prepare an expert witness would be granted to either side if requested. Under such circumstances, the trial court's decision not to grant an additional continuance was clearly not unreasonable. (*People v. Dale* (1934), 355 Ill. 330, 189

N.E. 269.) Moreover, once defendant had an expert witness, he did not request any additional time as offered by the trial court in order to prepare that witness. Therefore, as the State points out, defendant should not now be heard to complain that his rights were prejudiced thereby. (*People v. Dale* (1934), 355 Ill. 330, 189 N.E. 269.) Finally, defendant does not, in fact, appear to have suffered any prejudice. His expert's testimony was unequivocal and substantially unimpeached. As noted, it was based not on the facts of the case, but rather on the ability of *any* individual to form the requisite intent to commit a criminal act with the stipulated "blood level." Further, based on Dr. Abrams' testimony on cross-examination, the implication was that had the doctor been aware that defendant was habitually a heavy drinker, his testimony as to defendant's ability to act intentionally would have, in fact, been weakened.

## II

■ Defendant next contends that the trial court erred in denying his motion *in limine* to bar the admission of evidence of his three burglary convictions. The trial court allowed the prosecution to present such evidence to the jury for impeachment purposes.

It is well established that a prior criminal conviction is admissible to impeach a witness if: (1) it is less than 10 years old; (2) it is punishable by death or imprisonment for more than one year; (3) it involved dishonesty or false statement regardless of the punishment; and (4) the probative value outweighs the danger of unfair prejudice. (*People v. Montgomery* (1971), 47 Ill. 2d 510, 268 N.E.2d 695.) Convictions for burglary indicate dishonesty. *People v. Jones* (1974), 25 Ill. App. 3d 235, 323 N.E.2d 30.

In the instant case, defendant's credibility was clearly at issue because his was the only testimony which related to the amount and what he had drunk and the PCP he had allegedly ingested prior to the attack on AC. Defendant's convictions occurred in 1981, only three years prior to trial, and were punishable by more than one year in prison. Moreover, as the State correctly notes, since defendant's credibility was at issue in the case, his convictions indicating dishonesty were more probative than prejudicial. All of the requirements of *Montgomery* were met, and the trial court did not err in denying defendant's motion *in limine*.

## III

■ Defendant next contends that the prosecutor's comment in closing argument regarding Dr. Abrams' alleged friendship with de-

fense counsel constituted reversible error. During cross-examination, Dr. Abrams stated that he had known counsel "off and on perhaps for a year or two." As noted in closing argument, the prosecutor made reference to this relationship. Defendant contends that "by this insidious comment to the jury, the prosecutor insinuated that Dr. Abrams had come to court—not to tell the truth—but to help his friend, the defense attorney."

Closing argument must be based on facts in evidence and the reasonable inferences drawn therefrom. (*People v. Watson* (1981), 94 Ill. App. 3d 550, 418 N.E.2d 1015.) Furthermore, a prosecutor has a duty to discuss witnesses and their credibility. (*People v. Spann* (1981), 97 Ill. App. 3d 670, 679, 422 N.E.2d 1051.) Here the prosecutor's comments were based on Dr. Abrams' testimony on cross-examination and the fact that he had known defense counsel for "a year or two" and that he had "rescheduled his appointments" to be present in court, and were therefore within the parameters of his "duty to discuss witnesses and their credibility." We find that the prosecutor's comments were within the bounds of proper closing argument.

## IV

■ Defendant next contends that he was not proved guilty beyond a reasonable doubt. This court recently stated:

"[I]t is the prerogative of the trial court to ascertain the truth. This court may not substitute its own feeling or judgment for the result reached by the trier of fact where the outcome of the case depends upon the weight of the evidence or the credibility of the witnesses. [Citations.] It has been repeatedly held that a ' " ' "*** finding of guilty will be disturbed only where the evidence is so unreasonable, improbable or unsatisfactory as to leave a reasonable doubt as to the defendant's guilt. [Citation.]" ' " ' *People v. Kline* (1982), 92 Ill. 2d 490, 506 [442 N.E.2d 154] quoting *People v. Durley* (1972), 51 Ill. 2d 590, 593, 283 N.E.2d 882." *People v. Gray* (1984), 121 Ill. App. 3d 867, 870, 460 N.E.2d 354.

In the instant case, the jury reasonably chose to believe the testimony of the four witnesses for the State which consistently depicted defendant's actions as those of an individual capable of forming an intent. Although the defendant's expert witness testified to the contrary, "[i]n all situations in which experts are called to testify, their comparative credibility and the weight to be accorded to their testimony 'is a matter for the trier of fact to determine.' "

*People v. Gray* (1984), 121 Ill. App. 3d 867, 870, quoting *People v. Platter* (1980), 89 Ill. App. 3d 803, 817, 412 N.E.2d 181.

The decision of the jury is not unreasonable in light of testimony that the defendant had the presence of mind to follow AC home from the alley while making coherent conversation; wait for her to unlock her door before forcing himself into her house; and replace the telephone receiver when she tried to summon assistance. He removed her dentures before placing his penis in her mouth. Defendant's comments to the police were also rational. We find the decision of the jury to be well supported by the evidence. Therefore, defendant's contention that he was not proved guilty beyond a reasonable doubt is without merit.

## V

■ Defendant next contends that the trial court erred in failing to order a "timely presentence report." A review of the record reveals a "Presentence Investigation" of defendant dated April 21, 1983. No further presentence report was ordered by either party prior to defendant's sentencing hearing on May 23, 1984. Defendant's argument appears to be that the court had a duty to *sua sponte* order a more timely report. However, this court recently held in *People v. Gornick* (1982), 107 Ill. App. 3d 505, 437 N.E.2d 892, that "any purported deficiency in the [ten-month-old] presentence report with respect to its lack of current information was waived by defendant's failure to object." (*People v. Gornick* (1982), 107 Ill. App. 3d 505, 515.) The same principle would appear applicable in the instant case involving a 13-month-old report. Therefore, defendant has waived this issue by failing to object to the timeliness of his presentencing report prior to sentencing. See also *People v. Meeks* (1980), 81 Ill. 2d 524, 441 N.E.2d 9.

■ In a related argument, defendant contends that the court failed to "consider" his presentencing report in imposing sentence. It is well established that a trial court is not required to detail for the record the process it uses in reaching its determination of a proper sentence. (*People v. Bergman* (1984), 121 Ill. App. 3d 100, 458 N.E.2d 1370.) Moreover, comments of the trial court at the sentencing hearing in this case indicate that the report was considered by the court: *e.g.*, the court noted that there was nothing in defendant's background to suggest that he would "be the type of citizen that the court would ever want to see on the street." In addition, the prosecution at the sentencing hearing referred specifically to the report in arguing for an extended-term sentence for defendant.

Thus, defendant's contention that the court failed to consider the report lacks merit.

## VI

■ Defendant contends that the trial court failed to consider factors in mitigation in sentencing defendant. Defendant suggests that his conduct "neither caused nor threatened serious physical harm to another." While this is recognized as a "factor in mitigation" under the statute (Ill. Rev. Stat. 1981, ch. 38, par. 1005—5—3.1), we opine that the acts of which defendant was found guilty—the attempted rape and deviate sexual assault of a 64-year-old woman with a fractured hip—accompanied by threats that he would break her arms if she resisted, at the very least threatened serious physical harm.

Moreover, a review of the record establishes that defense attorney did, in fact, argue factors in mitigation, including the one here stated at the sentencing hearing. Thus, it is assumed that the court considered such factor. *People v. Bergman* (1984), 121 Ill. App. 3d 100, 121.

## VII

■ Finally defendant contends that the court erred in imposing extended-term sentences. In Illinois, a defendant may be sentenced to an extended-term sentence if he is convicted of a felony committed against: (1) a person 60 years of age or older at the time of the offense, or against (2) a person physically handicapped at the time of the offense. (Ill. Rev. Stat. 1981, ch. 38, pars. 1005—5—3.2(b)(2)(ii), (iii).) A handicap is a permanent and disabling physical condition which "impairs the ability of the person to avoid or prevent the commission of the offense." Ill. Rev. Stat. 1981, ch. 38, par. 1005—5—3.2(b)(2).

The victim here was 64 years of age at the time of the offense and had difficulty walking because of a hip fracture. The age of this victim alone is sufficient to justify the extended-term sentence. We can therefore find no error with the sentences imposed by the trial court.

Affirmed.

HARTMAN and BILANDIC, JJ., concur.