THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. DERRICK BERRY, JR., Defendant-Appellant.

First District (3rd Division)   No. 1—90—0565

Opinion filed June 29, 1994.

Michael J. Pelletier and Linda Eigner, both of State Appellate Defender's Office, of Chicago, for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, William D. Carroll, and Christine Cook, Assistant State's Attorneys, of counsel), for the People.

JUSTICE GREIMAN delivered the opinion of the court:

Following a jury trial, defendant Derrick Berry was convicted of armed robbery (Ill. Rev. Stat. 1985, ch. 38, par. 18—2—(a)) and sentenced to 10 years' imprisonment. Defendant now argues that this court should reverse his conviction on grounds that the State violated his due process rights at trial by: (1) introducing evidence of his post-arrest silence to impeach his alibi testimony; (2) improperly impeaching his alibi witnesses with evidence of their failure to come forward and notify the police of the alibi; (3) attempting to shift the burden of proof by arguing that defendant failed to produce certain witnesses to support his defense; (4) introducing evidence of a prior nonidentification lineup to bolster testimony of a subsequent identification; and (5) cumulative error or ineffective assistance of counsel. Alternatively, defendant asks this court to reduce his sentence for an alleged abuse of discretion at the sentencing hearing.

We affirm the trial court.

On May 6, 1988, Kimberly Wescott was a co-owner of a Baskin-Robbins store where she worked with Michael Shannon and David Arnold. Between 9:30 and 10 p.m. Wescott saw a man later identified as defendant walk into the store, sit down and after a few minutes exit and stand outside the store. Wescott asked the employees if they knew defendant because it was unusual for someone to sit in the store without ordering anything, and they told her they did not.

Defendant returned 10 to 15 minutes later wielding a long-barreled gun and announced, "This is a stick up." At this time, Wescott could see defendant's face and his gun as he stood about six feet away from her and all of the store lights were illuminated. Defendant ordered Arnold to lie on the floor and Shannon to turn off the lights and then lie on the floor. Shannon, who stood approximately four to six feet away from defendant, followed this directive; however, several lights remained on including six-foot florescent lights in the front area and other lights in the back room.

Defendant then approached Wescott, jabbed the gun in her side and the two walked to the cash register where defendant removed

$70 to $100. Defendant indicated he knew there was more money in the store and proceeded to a cashbox hidden from plain view. Wescott opened the cashbox and handed defendant its contents of rolled coins and $100 in cash while she took a long look at defendant's face, and then obeyed his order to lie on the floor.

Defendant told Shannon, who had a clear view of defendant's face, to open the back door and then return to the floor and count to 100; anyone who moved before reaching 100 would be shot. After Shannon heard defendant exit, he locked the back door and Wescott called the police.

After the police arrived, all three witnesses described the robber as a black male with a dark complexion, 6 feet 1 inch in height and weighing 160 to 165 pounds.

Less than a week after the robbery, Wescott viewed a physical lineup of five or six black men but failed to identify anyone as the offender. A month later, Wescott viewed another lineup and identified defendant as the robber. Wescott later testified that she recognized defendant in the second lineup as soon as she saw him.

In July the detective investigating the robbery (Detective Boylan) learned that Arnold was involved in this occurrence. When questioned, Arnold told the detective that defendant was the robber. Arnold also stated that he had informed defendant that there would be few people in the store at the day and time in question and the location of money not in the register, and that he received $15 for his involvement in the robbery. Arnold was later arrested for conspiracy to commit armed robbery, for which he pled guilty.

On July 8 Detective Boylan obtained defendant's picture and compiled a photo array of six men, from which Shannon identified defendant as the robber. Later that day Boylan went to defendant's home, spoke with his family and left them his card. Detective Boylan returned to defendant's home three times to inquire about defendant's whereabouts but was never contacted by defendant.

At trial Wescott, Shannon and Arnold positively identified defendant as the offender. Arnold's testimony suggested defendant's premeditation in committing the crime. Specifically, Arnold testified that he knew defendant from high school and that about one week before the robbery defendant approached him on a basketball court and asked if he would turn defendant in if defendant robbed the Baskin-Robbins store. Arnold also testified that defendant gave him "a little cash" sometime after the robbery.

Defendant testified that in May of 1988 he was 20 years old, approximately 6 feet 1 inch in height and weighing about 180 pounds. Defendant also stated that on the night of the robbery he was at a

party with Felicia Jones, his girl friend and the mother of his child. Specifically, Jones picked him up at the car wash where he worked and drove him to a birthday party for a friend of three years, Robin Wyms, held at the home of Jones' cousin, Brenda Crawford. Defendant stated that he and Jones arrived at Crawford's home at 8:30 p.m. and stayed until 10 or 10:15 p.m. when they left for a nearby motel where they would spend the night.

Defendant also testified that before he was placed in the lineup Detective Boylan's partner told him, "I don't think you did it because David Arnold's brother looks just like you."

Felicia Jones and four other people attending Brenda Crawford's party testified for the defense. Jones, Crawford, Crawford's sister Edwina Johnson and her cousin Robin Wyms and their friend Denise Barnes all testified that defendant and Jones arrived at Crawford's party before 9 p.m. and left between 10 and 11 p.m. However, these women gave conflicting accounts of the day of the party and failed to recognize that the party occurred during a holiday weekend (Mother's Day). The women also testified that they knew defendant before the party for various lengths of time ranging from three to six years.

Defendant was convicted of armed robbery (Ill. Rev. Stat. 1985, ch. 38, par. 18—2—(a)) and eligible to serve a term of six to 30 years' imprisonment. (Ill. Rev. Stat. 1989, ch. 38, par. 1005—8—1(3).) The State requested a 10-year sentence, defendant requested a six-year sentence, and the trial court determined that a 10-year sentence was appropriate.

■ Defendant first contends that the State violated his due process rights by impeaching his alibi testimony with his post-arrest silence in violation of *Doyle v. Ohio* (1976), 426 U.S. 610, 49 L. Ed. 2d 91, 96 S. Ct. 2240. *Doyle* stands for the proposition that implicit in the *Miranda* warnings is the promise that silence will carry no penalty should the accused choose to invoke that right. *Doyle*, 426 U.S. at 617-18, 49 L. Ed. 2d at 97-98, 96 S. Ct. at 2244-45.

The State argues that defendant has waived this issue on appeal by failing to make a timely objection at trial and by failing to raise the alleged violations in his post-trial motion.

In reply, defendant asserts that we should review the improper comments under Supreme Court Rule 615(a) (134 Ill. 2d R. 615(a)), which provides a "limited exception to" the doctrine of waiver to allow a reviewing court to consider plain errors affecting substantial rights not properly preserved for review. (*People v. Herrett* (1990), 137 Ill. 2d 195, 209, 561 N.E.2d 1.) In *Herrett*, where the prosecution improperly commented upon defendant's failure to testify, the Illinois Supreme Court stated that alleged errors would be reviewed under

the plain error doctrine if (1) the evidence was "closely balanced" to preclude the possibility that an innocent person may have been wrongly convicted as a result of the error, *or* (2) "the error is so fundamental and of such magnitude that the accused was denied a fair trial." (*Herrett*, 137 Ill. 2d at 209-10.) The *Herrett* court stated that the second prong of the plain error doctrine will only be invoked in exceptional circumstances when "the error is so fundamental to the integrity of the judicial process and so prejudicial to the defendant that the trial court could not cure the error by sustaining an objection or instructing the jury to disregard the error." *Herrett*, 137 Ill. 2d at 214-15.

Applying the first prong of the plain error doctrine to the facts of this case, we believe that the evidence cannot reasonably be regarded as closely balanced. The State presented testimony of three eyewitnesses who identified defendant as the offender. Kimberly Wescott and Michael Shannon testified that they had a clear view of defendant's face during the armed robbery and subsequently identified him in a lineup and at trial. Moreover, defendant's co-conspirator (David Arnold) testified that defendant told him of his plans to rob the store and that defendant did in fact rob the store, and that he received some money for participating in the scheme. Although defendant presented five witnesses to support his alibi, the State discredited their testimony by emphasizing their conflicting accounts of the party defendant allegedly attended and their close ties to defendant either as friends or relatives of Felicia Jones.

Recognizing that the "or" separating the two prongs of the plain error doctrine dictates independent analysis (see *People v. Mullen* (1990), 141 Ill. 2d 394, 566 N.E.2d 222; *People v. Washington* (1993), 243 Ill. App. 3d 138, 611 N.E.2d 1043), we consider whether the alleged errors were of such magnitude to clearly deprive defendant of a fair trial. Prosecutorial comment upon a defendant's post-arrest silence is always improper; however, it is not necessarily " 'an error of such magnitude as to clearly deprive the defendant of a fair trial.' " *People v. Nitz* (1991), 143 Ill. 2d 82, 108, 572 N.E.2d 895, quoting *Herrett*, 137 Ill. 2d at 215; see *People v. Balderas* (1993), 241 Ill. App. 3d 845, 858, 609 N.E.2d 936.

The record in the case at bar evinces the prosecution's irreverence for defendant's constitutional right to remain silent following his arrest. Specifically, the State cross-examined defendant concerning his failure to disclose his alibi to police officers, elicited evidence from the arresting officer of his failure to mention the alibi, and argued to the jury that his silence discredited the alibi defense.

The State concedes a *Doyle* violation but asks us to close our eyes

to such misconduct and affirm. If we affirm, how will we convey the message to overzealous prosecutors to abide by their oath to follow the law and uphold their responsibility to observe and protect the constitutional rights of the accused? Moreover, if the evidence of defendant's guilt is as overwhelming as the State would have us believe, then there can be no justification for the prosecution to have attempted to deny defendant his protected rights (not to suggest that such an attempt would be justified in a close case, either).

Defendant cites *People v. Ridley* (1990), 199 Ill. App. 3d 487, 557 N.E.2d 378, for the proposition that the State's use of a defendant's post-arrest silence always constitutes reversible error. In *Ridley*, the court reversed the defendant's conviction based almost exclusively upon a *Doyle* violation which it considered "fundamentally unfair" to the accused's right to remain silent. (See *Ridley*, 199 Ill. App. 3d 487.) We distinguish *Ridley* from the present controversy for several reasons. First and foremost, the holding in *Ridley* is limited to its facts since the decision was filed on the same day that the Illinois Supreme Court filed the *Herrett* decision; hence, *Herrett* represents the controlling authority on this issue so that a *Doyle* violation does not automatically require reversal. Moreover, while the *Ridley* court viewed the evidence as "closely balanced" since defendant was identified as the offender upon the testimony of a single eyewitness, the evidence in the present controversy is not at all close; three eyewitnesses, one of whom was an admitted co-conspirator, positively identified defendant as the offender.

In thus affirming defendant's conviction, we acknowledge the significant amount of evidence identifying defendant as the offender. Even if the evidence was not closely balanced, we decline to concede the present controversy as an "exceptional circumstance" to warrant reversal under the second prong of the plain error doctrine notwithstanding our extreme disapproval of the *Doyle* violation at issue and, of course, in general. The record shows that the *Doyle* violation did not contribute to defendant's conviction, which we attribute beyond a reasonable doubt to the numerous inconsistencies among his witnesses in presenting an unbelievable explanation of his whereabouts during the events at issue. See *People v. Titone* (1986), 115 Ill. 2d 413, 505 N.E.2d 300 (*Doyle* violation amounted to harmless error since trial court in bench trial presumedly considered only properly submitted evidence).

■ Defendant next argues that the State improperly impeached two of his alibi witnesses on cross-examination, Felicia Jones and Edwina Johnson, with testimony concerning their failure to inform the police of defendant's alibi and improperly commented on such testimony in closing argument.

A witness can be impeached with prior silence where it is shown that the witness had the opportunity to make an exculpatory statement and, under the circumstances, a person would normally have made that statement. (*People v. Conley* (1989), 187 Ill. App. 3d 234, 244, 543 N.E.2d 138; *People v. Andras* (1992), 241 Ill. App. 3d 28, 43, 608 N.E.2d 310.) Evidence that a witness failed to give exculpatory information to authorities is admissible grounds for impeachment where the witness is a friend of the accused and has knowledge of the friend's arrest before trial. *Conley*, 187 Ill. App. 3d at 244-45; *Andras*, 241 Ill. App. 3d at 43; *cf. People v. Watson* (1981), 94 Ill. App. 3d 550, 418 N.E.2d 1015 (impeachment of defense witnesses improper due to State's knowledge of defendant's alibi prior to trial yet failure to interview witnesses).

Here, the State satisfied the required evidentiary foundation to impeach both alibi witnesses. The State established that Felicia Jones knew of defendant's arrest in June or July 1988 when he called her from jail. Jones testified that she told a police officer about defendant's alibi the day after his arrest. Jones also testified that she contacted the defense witnesses, all of whom were her friends or relatives, about the pending charge. Due to the intimate relationship between defendant and Jones and the fact that she knew months before trial of defendant's alibi yet failed to bring this fact to the attention of the police, no foundational problem exists that would have precluded her impeachment on these grounds. See *Conley*, 187 Ill. App. 3d at 245 (foundational requirements satisfied for proper impeachment of witness who was a close friend of the defendant and discussed the case with defendant and other friends before trial); *Andras*, 241 Ill. App. 3d at 43.

The State also established that Edwina Johnson, Jones' cousin, knew defendant for five years and learned of his arrest from Jones soon after this occurrence. Although Johnson testified that she did not speak with defendant about the case after his arrest, the length of her friendship with defendant and the nature of her relationship with Jones provided a sufficient foundation for impeachment under *Conley* (187 Ill. App. 3d at 245).

Having satisfied the foundational requirements to impeach Jones and Johnson, the prosecutor's comments in closing argument were a legitimate attack on their credibility. See *People v. Flores* (1989), 128 Ill. 2d 66, 94-95, 538 N.E.2d 481 (credibility of witnesses is a proper subject for closing argument if based on facts in the record or reasonable inferences drawn therefrom); *People v. Morrison* (1985), 137 Ill. App. 3d 171, 184, 484 N.E.2d 329.

■ Defendant further argues that the State's closing argument

concerning his failure to produce certain witnesses improperly shifted the burden of proof.

In a criminal trial, the accused bears no burden to prove his innocence and is not obliged to present any evidence of his innocence. (*People v. Lopez* (1987), 152 Ill. App. 3d 667, 677-79, 504 N.E.2d 862.) The State may argue at closing the effect or credibility of the evidence presented or reasonable inferences to be drawn therefrom without shifting the burden of proof. (*Flores*, 128 Ill. 2d at 95.) We give the prosecutor a good deal of latitude in closing argument and will respect the trial court's determination of the propriety of such argument absent a clear abuse of discretion. *Balderas*, 241 Ill. App. 3d at 860; *People v. Manley* (1991), 222 Ill. App. 3d 896, 907, 584 N.E.2d 477; *People v. Stiff* (1989), 185 Ill. App. 3d 751, 756, 542 N.E.2d 392.

Defendant first objects to the prosecutor's statements concerning defendant's failure to subpoena Sam Arnold, the co-conspirator's brother whom defendant supposedly resembled, to appear at trial. However, these statements represent reasonable responses to defendant's testimony suggesting that the police may have mistakenly arrested him instead of Arnold. The State does not necessarily shift the burden of proof much less prejudice a defendant by attacking a theory of defense. (See *People v. Phillips* (1989), 127 Ill. 2d 499, 526-27, 538 N.E.2d 500.) Moreover, the record shows that the trial court cured any error by sustaining an objection and instructing the jury to disregard the statements at issue. *Herrett*, 137 Ill. 2d at 214-15; see *People v. Bujdud* (1988), 177 Ill. App. 3d 396, 406, 532 N.E.2d 370 (prosecutor's statement in closing argument concerning defendant's subpoena power yet failure to produce material witness cured by adequate instructions to the jury to disregard statements).

Defendant also challenges the prosecutor's statements prompting the jury to question why defendant did not produce "adults" who were present at the party as witnesses when in fact all defense witnesses except Felicia Jones were over 20 at the time of the occurrence. Although we question how these statements could have prejudiced the jury, we acknowledge their propriety as reasonable inferences drawn from the testimony of several defense witnesses who stated that parents or aunts attended the party for various purposes. See *Phillips*, 127 Ill. 2d at 526-27.

Additionally, the prosecutor's statements concerning defendant's failure to have his mother testify cannot serve as grounds for reversal. Not only did defendant testify on direct examination that a police officer told him upon arrest, "I don't think you did it because David Arnold's brother looks just like you," but he also stated on

cross-examination that his mother overheard a similar discussion at the lineup. Because defendant volunteered this story and injected his mother's name into his defense, and she allegedly could have shed light upon a vital matter (*i.e.*, that the police knew of defendant's innocence), the prosecutor had a legitimate right to comment upon this aspect of defendant's testimony and the failure to call defendant's mother. (*People v. Adams* (1985), 109 Ill. 2d 102, 120-21, 485 N.E.2d 339, quoting *People v. Williams* (1968), 40 Ill. 2d 522, 528, 240 N.E.2d 645 (prosecution may comment on the accused's failure to call a non-alibi witness where the accused presumably has control over such witness who could throw light upon a vital matter).) Again, the trial court sustained defendant's objection and instructed the jury to disregard the argument to cure any alleged error. See *Herrett*, 137 Ill. 2d at 214-15.

Defendant further contests the State's introduction of evidence of a prior nonidentification lineup to bolster subsequent identification testimony.

The State may not bolster a witness' identification of a defendant by introducing evidence that the witness failed to identify anyone else during pretrial identification procedures. (*People v. Hayes* (1990), 139 Ill. 2d 89, 138-39, 564 N.E.2d 803; *People v. Jones* (1992), 153 Ill. 2d 155, 161-62, 606 N.E.2d 1145.) Here, the prosecution in its closing and rebuttal arguments urged the jury to consider Kimberly Wescott's initial lineup nonidentification as evidence that her later identification of defendant was reliable. Although the nonidentification testimony should not have been allowed, such error is harmless in light of the overwhelming evidence identifying defendant as the offender. See *Hayes*, 139 Ill. 2d at 139 (introduction of evidence of previous nonidentification of defendant by four witnesses was inadmissible hearsay but not reversible error); *Jones*, 153 Ill. 2d at 161-62 (armed robbery victim's testimony that she viewed more than one lineup, identifying the defendant in the second lineup but not the first, was improper but did not call for reversal).

■ Defendant next argues that the cumulative effect of the alleged due process violations denied him a fair trial. Although trial errors may have a cumulative effect when considered together, none of the specific allegations here are of such magnitude that, even taken together, they indicate defendant has been denied a fair trial. See *People v. Albanese* (1984), 102 Ill. 2d 54, 82-83, 464 N.E.2d 206; *cf. People v. Davidson* (1992), 235 Ill. App. 3d 605, 611-13, 601 N.E.2d 1146 (prosecution's blatant misstatement of law and evidence "undeniably" affecting the defendant's credibility deprived him of a fair trial and amounted to cumulative error).

As an alternative theory for relief, defendant argues that his attorney's failure to object to the State's alleged use of improper evidence and argument, essentially concerning references to his post-arrest silence and Kimberly Wescott's prior lineup nonidentification, denied him effective assistance of counsel.

To prevail on a claim of ineffective assistance of counsel, defendant must show his counsel's representation " 'fell below an objective standard of reasonableness' " (*Nitz*, 143 Ill. 2d at 108-09, quoting *Strickland v. Washington* (1984), 466 U.S. 668, 688, 80 L. Ed. 2d 674, 693, 104 S. Ct. 2052, 2064), and that counsel's shortcomings were so serious as to " 'deprive the defendant of a fair trial, a trial whose result is reliable.' " (*Nitz*, 143 Ill. 2d at 109, quoting *Albanese*, 104 Ill. 2d at 525; see *Strickland*, 466 U.S. at 687, 80 L. Ed. 2d at 693, 104 S. Ct. at 2064.) Effective assistance means competent, not perfect, representation. *People v. Puente* (1984), 125 Ill. App. 3d 152, 158, 465 N.E.2d 682, citing *People v. Berland* (1978), 74 Ill. 2d 286, 311, 385 N.E.2d 649.

Although the prosecutor improperly commented on defendant's post-arrest silence, defendant was not denied effective assistance of counsel since the record shows that his attorney made objections which the court sustained. Moreover, the evidence in this case was not so closely balanced to have expected a different verdict without the *Doyle* violation. See *Nitz*, 143 Ill. 2d at 109-10.

Defendant also fails to establish that he suffered actual prejudice from counsel's handling of Wescott's prior nonidentification. To show actual prejudice, defendant must establish " 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' " (*People v. Kokoraleis* (1989), 132 Ill. 2d 235, 277, 547 N.E.2d 202, quoting *Strickland*, 466 U.S. at 694, 80 L. Ed. 2d at 698, 104 S. Ct. at 2068; see *Nitz*, 143 Ill. 2d at 109.) Defendant claims that counsel not only failed to act to exclude the prior lineup nonidentification, but that he also contributed to its prejudicial effect by commenting during closing argument:

> "Now, what's interesting is that Miss Wescott had an opportunity shortly thereafter to view an actual lineup. She was informed at the time that they thought they might have caught the person. *** And after viewing the lineup, she didn't recognize the individual that robbed her store. That was within a week or two of the incident. So, it was fresh."

Defendant cites *People v. Beals* (1992), 248 Ill. App. 3d 19, 26, 618 N.E.2d 273, for the proposition that an attorney's failure to object to a prior consistent statement warrants a finding of ineffective assistance of counsel. However, the *Beals* court more precisely held that a

defense attorney's failure to object to statements which bolstered the credibility of witnesses whose testimony was critical to the case contributes to a reversal, especially when counsel personally testified by way of stipulation against his own client. *Beals*, 248 Ill. App. 3d at 25.

*Beals* is distinguishable since, here, defense counsel's conduct did not "destroy[ ] the credibility of the defense." (*Beals*, 248 Ill. App. 3d at 24.) Instead, the totality of counsel's conduct throughout these proceedings supports a finding of effective representation. *Strickland* bids us to consider counsel's conduct in light of his total performance rather than isolated acts. (See *Strickland*, 466 U.S. at 690, 80 L. Ed. 2d at 695, 104 S. Ct. at 2066.) At trial, defense counsel presented six witnesses and a thorough closing argument to persuade the jury of defendant's innocence. Counsel also made a motion for a directed finding and other post-trial motions to attempt to exonerate defendant. At the sentencing hearing, counsel presented character references attempting to mitigate the length of defendant's incarceration. Hence, the record shows that defendant was afforded a thoughtful defense and, in any event, he has failed to demonstrate how counsel's performance resulted in the kind of prejudice that would dictate a reversal.

■ Defendant's final argument on appeal concerns the sentencing court's abuse of discretion in so far as: (1) the sentence was excessive considering his rehabilitative potential; and (2) the court improperly considered the fact that his conduct threatened serious bodily harm, a factor inherent in the offense of armed robbery.

The imposition of a sentence rests within the sound discretion of the trial court and will not be altered upon review absent an abuse of discretion. (*People v. Perruquet* (1977), 68 Ill. 2d 149, 153, 368 N.E.2d 882.) A reviewing court will not substitute its judgment for that of the sentencing court merely because it would weigh factors differently. *Perruquet*, 68 Ill. 2d at 156.

The record shows that the trial court properly considered defendant's rehabilitative potential in rendering the 10-year sentence. After reading several letters attesting to defendant's good moral character, the court considered whether defendant's conduct was a result of circumstances unlikely to reoccur and decided to the contrary.

Defendant indicates his only other criminal offense was a single misdemeanor battery conviction which resulted in one year of probation which he successfully completed. However, a defendant's lack of a prior record is not as persuasive a consideration at sentencing as the seriousness of the crime. (*People v. Hernandez*

(1990), 204 Ill. App. 3d 732, 740, 562 N.E.2d 219; see *People v. Boclair* (1992), 225 Ill. App. 3d 331, 335-36, 587 N.E.2d 1221 (trial court need not afford greater weight to defendant's potential for rehabilitation than to the seriousness of the crime).) Here, defendant not only chose to carry a gun during the robbery but he also employed the weapon to his advantage (*i.e.*, by pointing a gun at three people and using it to jab Kim Wescott in the side to force her to render the contents of the register and cashbox to him). Defendant also demonstrated his predisposition to commit violence in stating he would shoot anyone who moved before counting to 100.

The record also shows that the trial court did not base its decision to sentence defendant to 10 years' imprisonment on the threat of bodily harm. (See *People v. Conover* (1981), 84 Ill. 2d 400, 419 N.E.2d 906 (in exercising its discretion at sentencing, a court may not consider a factor inherent in the offense); see also *People v. Rhodes* (1986), 141 Ill. App. 3d 362, 490 N.E.2d 169 (when sentencing an armed robbery offender, the court may not consider the threat of bodily harm or the presence of a weapon).) The statements at issue are as follows:

> "The facts of this case are such that sure, nobody was shot. That's nice. But when you are dealing with young people who work in these stores *** and have a gun stuck to them, and walk to two different spots to get more money, that is real serious stuff.
>
> * * *
>
> Implicit in the offense of armed robbery is the fact that his conduct certainly did threaten serious physical harm to another. And he sure did in this case."

Contrary to defendant's contention, these statements are permissible responses to defense counsel's suggestion that defendant should receive a lighter sentence since he did not inflict harm upon any witness during the robbery. See *People v. Reid* (1983), 94 Ill. 2d 88, 445 N.E.2d 329.

Even if the statements at issue could be interpreted to indicate that the court considered the threat of force or physical harm as an aggravating factor, the statements fail to indicate that "consideration of the threat of serious harm was a major consideration in the imposition of the sentence." (*Reid*, 94 Ill. 2d at 91.) The trial court repeated the serious nature of the crime in light of the facts of this case; however, the court equally emphasized factors in mitigation of defendant's sentence such as his potential for rehabilitation, as stated, and the fact that defendant was a "loving son, a loving father, a loving neighbor, a loving athlete" and so on. Hence, the trial court's comments when read in their entirety establish that the references

to harm or the threat of harm represented a comment on particular facts, not an improper consideration of a factor implicit on the offense.

In light of the foregoing discussion, we affirm the trial court's decision and sentence.

Affirmed.

RIZZI and CERDA, JJ., concur.