NO. 5-99-0131

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

________________________________________________________________________

THE PEOPLE OF THE STATE OF ILLINOIS, )  Appeal from the 

)  Circuit Court of

     Plaintiff-Appellee, )  St. Clair County.

)

)  No. 96-CF-392

)

TERRY DIBBLE, )  Honorable

)  Jan V. Fiss,

     Defendant-Appellant. )  Judge, presiding.

________________________________________________________________________

JUSTICE WELCH delivered the opinion of the court:

On April 26, 1996, in the circuit court of St. Clair County, Terry Dibble (defendant) was indicted for the offense of first-degree murder in violation of section 9-1(a)(3) of the Criminal Code of 1961 (Code) (720 ILCS 5/9-1(a)(3) (West 1994)), in that, on or about the ninth day of November 1993, while committing the forcible felony of burglary, he, without lawful justification, shot Billy Barker in the head with a shotgun, causing the death of Billy Barker.  Defendant was tried before a jury on May 19 through 21, 1998, and found guilty of first-degree murder.  On August 28, 1998, defendant was sentenced to 45 years in the Illinois Department of Corrections.

The evidence presented at defendant's trial can be summarized as follows.  On the evening of November 9, 1993, defendant, Preston Arnsperger, and Christopher Mathis traveled together in an automobile driven by defendant to the home of the victim, Billy Barker.  Defendant had been acquainted with Barker, had lived in Barker's rental house, and had visited with Barker at Barker's residence.  Defendant and Barker had engaged in two fist fights in the past and were not on the best of terms.  Arnsperger and Mathis did not know the victim.  

According to Arnsperger and Mathis, who testified at defendant's trial, their purpose was to break into Barker's home and steal marijuana and cocaine, which defendant had told them were always present in the home in large quantities.  Defendant had told Arnsperger and Mathis that Barker would not be at home as he was always at a tavern during the evening hours.  Nevertheless, according to Arnsperger and Mathis, defendant took a shotgun with him into Barker's house.

Entry was gained through a window, and defendant directed Arnsperger and Mathis to search a bedroom for drugs.  Defendant then proceeded to a different part of the house.  While Arnsperger and Mathis were in the bedroom, they heard a male voice, not defendant's, say, "Freeze, I've got a .45," or words to that effect.  They then heard defendant respond with similar words, immediately followed by a shotgun blast.  Arnsperger and Mathis immediately exited the house through the same window they had entered and returned to the car.  Shortly thereafter, defendant exited the house and returned to the car.  They left the scene.    

Barker was found the next evening, laying dead on the floor of his home.  He had been shot in the eye with a shotgun.  Although marijuana and a large amount of cash were in plain view in the home, apparently nothing had been taken from the home.  

Prior to defendant's trial, Arnsperger and Mathis both pleaded guilty to felony murder.  Pursuant to a negotiated plea, Arnsperger and Mathis agreed to testify at defendant's trial in return for the State agreeing not to seek a sentence in excess of 60 years' imprisonment.  Arnsperger was serving a 30-year prison sentence; Mathis was serving a 35-year prison sentence.  Both were seriously impeached by prior inconsistent statements they had made to the police at the time the crime was being investigated.  Mathis in particular admitted that he had lied to the police in an attempt to minimize his responsibility for the crime.  

The murder weapon was never found, and no physical evidence linked defendant to the crime.  Defendant's conviction rested primarily on the testimony of Arnsperger and Mathis.  Defendant did not present any evidence at the trial and did not testify in his own behalf.  His counsel did, however, engage in extensive cross-examination of the State's witnesses, particularly Arnsperger and Mathis.      

Prior to defendant's trial, the State filed a notice of intent to submit instructions to the jury on multiple alternative theories of first-degree murder under sections 9-1(a)(1) and 9-1(a)(2), in addition to section 9-1(a)(3) of the Code (720 ILCS 5/9-1(a)(1), (a)(2), (a)(3) (West 1994)).  Defendant made no objection to the State's proposed instructions.  Accordingly, the jury was instructed that defendant could be found guilty of first-degree murder if he, or one for whose conduct he was legally responsible, performed the acts that caused the death of Billy Barker and that he intended to kill or do great bodily harm to Barker, he knew that his acts would cause death to Barker, he knew that his acts created a strong probability of death or great bodily harm to Barker, or he was attempting to commit or committing the offense of burglary.  The jury was further instructed that a person commits the offense of burglary when he, without authority, knowingly enters a building with the intent to commit therein the offense of theft.  The jury was given only a general verdict form, so it is impossible to know on which theory of first-degree murder defendant was found guilty.

This brings us to defendant's first argument on appeal.  Defendant was charged with, and the jury was instructed on, felony murder based on burglary as defined in section 19-1 of the Code (720 ILCS 5/19-1 (West 1992)).  However, the evidence presented at the trial showed beyond a reasonable doubt that defendant could not have been guilty of burglary because the "building" that he unlawfully entered was the victim's residence.  Accordingly, defendant could only be guilty of residential burglary as defined in section 19-3 of the Code  (720 ILCS 5/19-3 (West 1992)).  Burglary and residential burglary are mutually exclusive: residential burglary can be committed only in a dwelling place, while simple burglary cannot occur in a dwelling place.  
People v. Childress
, 158 Ill. 2d 275, 302 (1994).  However, the jury was not instructed that the term "building," as included in the definition of burglary, could not include a "dwelling place."  The victim in the present case was killed in his own dwelling place, and thus, defendant could not have been guilty of burglary or felony murder based on burglary.  Nevertheless, the jury was instructed on this theory of first-degree murder.

On appeal, defendant relies on the 
Stromberg
 rule to argue that the general verdict against him must be set aside where the jury was instructed that it could rely on two or more independent grounds and that one of those grounds, felony murder based on burglary, is insufficient, because the verdict may have rested exclusively on the insufficient ground.  See 
Stromberg v. California
, 283 U.S. 359, 367-68, 75 L. Ed. 1117, 1122, 51 S. Ct. 532, 535 (1931).  Defendant argues that the jury's general verdict against him may have rested exclusively on the improper felony murder ground and that such a charge, and the instructions based thereon, are unconstitutional.  While we agree that, under the jury instructions given, the jury could have improperly found defendant guilty of felony murder based on burglary because the jury was not instructed that a "building" could not include a "dwelling place," we do not agree with defendant that the charge or instructions were unconstitutional.  Instead, we agree with the State that the charge was not 
legally
 insufficient but that it was 
factually
 insufficient.  That is, the evidence produced at the trial did not support a finding of guilt of felony murder based on burglary because the evidence produced at the trial demonstrated beyond a reasonable doubt that the "building" that defendant unlawfully entered was a "dwelling place."  A conviction for felony murder based on burglary is not supported by the evidence and cannot stand.  However, the other theories of first-degree murder were supported by the evidence, and convictions based on those theories can stand.

In 
Stromberg v. California
, 283 U.S. 359, 75 L. Ed. 1117, 51 S. Ct. 532 (1931), the defendant was convicted of a violation of section 403a of the California Penal Code for one or more of the following acts: displaying a red flag or banner in a public place "as a sign, symbol[,] and emblem of opposition to organized government [or] as an invitation and stimulus to anarchistic action [or] as an aid to propaganda that is and was of a seditious character."  
Stromberg
, 283 U.S. at 361, 75 L. Ed. 1117, 51 S. Ct. at 533.  The jury was instructed that the defendant could be convicted if the flag was displayed for any one of the three purposes named.  However, the verdict was general and did not specify on which ground the defendant was convicted.  A conviction upon the first clause, however, that the flag was displayed as a symbol of opposition to organized government, would violate the defendant's first amendment right to free speech.  Thus, this clause could not constitute a lawful foundation for a criminal prosecution.  Accordingly, because it could not be determined whether or not the defendant's conviction rested exclusively on this invalid and unconstitutional criminal charge, her conviction was set aside.

The instant case differs from 
Stromberg
 in the following way.  The charge of felony murder based on burglary is a valid and constitutional charge, and had the murder occurred in the victim's office building, rather than his dwelling, the conviction could stand.  A charge of felony murder based on burglary violates no constitutional provision and is not invalid as a matter of law.  Accordingly, a conviction for felony murder based on burglary can stand where it is adequately supported by the evidence.  In 
Stromberg
, the charge and conviction, even if supported by the evidence, could not stand because they were unconstitutional.  In the instant case, the charge and conviction for felony murder based on burglary could stand if they were supported by the evidence.  In the case at bar they were not.  We conclude that the 
Stromberg
 rule does not apply to the case at bar.

Instead, we conclude that the rule of 
Griffin v. United States
, 502 U.S. 46, 116 L. Ed. 2d 371, 112 S. Ct. 466 (1991), applies to the case at bar.  In 
Griffin
, the United States Supreme Court explained that its decision in 
Stromberg
 stands for nothing more than the principle that where a provision of the constitution forbids a conviction on a particular ground, the constitutional guarantee is violated by a general verdict that may have rested on that ground.  502 U.S. at 53, 116 L. Ed. 2d at 379, 112 S. Ct. at 471.  The 
Griffin
 court refused to expand the holding of 
Stromberg
 to set aside a general verdict not because one of the possible bases of conviction was unconstitutional but because one of the possible bases of conviction was merely unsupported by sufficient evidence.  502 U.S. at 56, 116 L. Ed. 2d at 380, 112 S. Ct. at 472.  Thus, a reversal of a general verdict is not required where the evidence is insufficient to support one of several alternative means of committing the same crime, as set forth in the jury instructions.  See 
People v. Griffin
, 178 Ill. 2d 65, 83 (1997).

" 'After 
Griffin
, then, a general guilty verdict based on an instruction which includes different methods of committing the same offense in the disjunctive is grounds for reversal only where one alternative is legally defective, 
i.e.
, fails to correctly state the law, and not where the flawed alternative is factually inadequate, 
i.e.
, where the evidence is insufficient to sustain that count.' "
  People v. Griffin
, 178 Ill. 2d 65, 83-84 (1997) (citing 
People v. Griffin
, 247 Ill. App. 3d 1, 16 (1993)).   

In the instant case, the jury was instructed on three legally sufficient theories of first-degree murder.  The instructions in the instant case correctly state the law.  The offense of burglary was properly defined.  However, there was insufficient proof of one of the theories, felony murder premised on burglary.  Defendant does not argue, however, that there was insufficient proof of the other theories of murder.  Accordingly, we will assume that the jury convicted the defendant under one or both of the theories of first-degree murder that were supported by the evidence.  Defendant's conviction can therefore stand.

We recognize that the jury in the instant case may have been misled by the jury instructions relating to burglary, which defined burglary as the unauthorized entry into a "building" but failed to state that such a "building" did not include a dwelling place or residence.  Thus, the jury could have rested its conviction of defendant on the erroneous belief that defendant did, indeed, commit burglary and, therefore, felony murder premised on burglary.  However, this is an error in the jury instructions and is a result of defendant's failure to object to the State's instructions or to tender appropriate instructions of his own.  Defendant could have tendered an instruction explaining that a "building" did not include a residence, thus obviating any possible confusion.  Had the defendant done so, and the jury returned a general verdict of guilty, there would be no doubt that the jury had convicted on one of the alternative bases of murder and not on the basis of felony murder.  On the other hand, had the defendant tendered an appropriate instruction and the jury returned a special verdict finding the defendant guilty of felony murder premised on burglary, the conviction would have been overturned as not supported by sufficient evidence.    

Finally, we note that defendant failed to object at any time to the State's instructions on felony murder premised on burglary, failed to point out that such an instruction was not supported by the evidence, failed to object to the State's closing argument that defendant was guilty of felony murder premised on burglary, and failed to tender an instruction defining the term "building."  Accordingly, finding that no substantial rights of defendant were affected by the alleged error and that the evidence is not closely balanced, we find it to be waived.  

We turn now to defendant's other claims of error on appeal.  We find that none of them require extensive discussion, for defendant failed to raise them before the trial court, either by objection or by posttrial motion, thereby waiving them.  Furthermore, none of the other claims of error affect the substantial rights of defendant or deprived him of a fair trial, allowing us to review them under the plain error doctrine.  Finally, in the event that error did arise, it did not prejudice defendant and at worst constitutes harmless error.  The evidence in this case was not closely balanced.  Although there was no physical evidence linking defendant to the crime, the testimony of Arnsperger and Mathis, though impeached by prior inconsistent statements made to the police during the course of the investigation, was unrebutted.  The defense presented no evidence to rebut the testimony of Arnsperger and Mathis, and it presented no evidence of any motive the witnesses might have had to lie or to falsely implicate defendant.   

Defendant first argues that he was denied a fair trial by the prosecutor's use of inadmissible prior consistent statements to rehabilitate Mathis.  Assuming that prior consistent statements were improperly used to bolster Mathis's credibility, a point the State does not concede, the claimed error does not implicate a substantial right of defendant.  See 
People v. Keene
, 169 Ill. 2d 1, 18 (1995).  It does not constitute plain error and is waived.

Defendant next argues that he was denied a fair trial by the prosecutor's closing argument, which (1) falsely stated that the accomplices had no motive to lie since they were already imprisoned when the failure to testify against defendant would have been grounds to rescind their plea agreements and (2) vouched for the prosecution witnesses by telling the jurors that the accomplices knew what happened and were not liars.  Again, defendant did not object to the prosecutor's closing argument and did not raise the issue in his posttrial motion.  Even if the prosecutor's closing argument was improper, again a point the State does not concede, it does not affect a substantial right of defendant.  It is waived.  

Finally, defendant argues that he received the ineffective assistance of counsel at his trial with respect to 13 enumerated points, which include those claims of error already discussed herein.  There is no doubt that defendant's trial counsel did make mistakes at his trial.  However, in order to constitute the ineffective assistance of counsel, those mistakes must be so prejudicial that there is a reasonable probability that, but for counsel's mistakes, the result of the proceeding would have been different.  
Strickland v. Washington
, 466 U.S. 668, 694, 80 L. Ed. 2d 674, 698, 104 S. Ct. 2052, 2068 (1984).  A reasonable probability is a probability sufficient to undermine confidence in the outcome.  
Strickland
, 466 U.S. at 694, 80 L. Ed. 2d at 698, 104 S. Ct. at 2068.  The mistakes of defendant's counsel, even when viewed cumulatively, did not so prejudice defendant that there is a reasonable probability that, but for those mistakes, the result of the trial would have been different.  We note that many of the claimed mistakes by counsel were strategic decisions over which counsel has ultimate authority.  See 
People v. Guest
, 166 Ill. 2d 381, 394 (1995).  Defendant was not prejudiced by his counsel's alleged mistakes.

For the foregoing reasons, the judgment of the circuit court of St. Clair County is affirmed.

Affirmed.

CHAPMAN and MAAG, JJ., concur.