THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. DION WALLACE, Defendant-Appellant.

First District (5th Division) No. 1—00—0331

Opinion filed June 7, 2002.

QUINN, J., dissenting.

Rita A. Fry, Public Defender, of Chicago (Debra Loevy-Reyes, Assistant Public Defender, of counsel), for appellant.

Richard A. Devine, State's Attorney, of Chicago (Renee Goldfarb, Shannon Rizey, and Christine L. Kornak, Assistant State's Attorneys, of counsel), for the People.

JUSTICE REID delivered the opinion of the court:

Following a jury trial, the defendant, Dion Wallace, was found guilty of aggravated possession of a stolen motor vehicle pursuant to section 4—103.2(7)(A) of the Illinois Vehicle Code (625 ILCS 5/4—103.2(7)(A) (West 1998)) and was sentenced to eight years' imprisonment. On appeal, Wallace argues the trial court erred when it: (1) allowed the State to impeach defense witness Michael Hayes with his prior silence, (2) restricted his cross-examination of Officer Creel, (3) denied him a fair trial as a result of prosecutorial comments made during closing argument, (4) failed to order a substance abuse evaluation pursuant to the Treatment Alternatives for Special Clients (TASC) before sentencing him to eight years' imprisonment, (5) sentenced him under the mandatory Class X sentencing provision of section 5—5—3(c)(8) of the Unified Code of Corrections (730 ILCS 5/5—5—3(c)(8) (West 1998)), which he asserts is unconstitutional under *Apprendi v. New Jersey*, 530 U.S. 466, 147 L. Ed. 2d 435, 120 S. Ct. 2348

(2000), and (6) ruled on his *pro se* motion for a reduction in sentence without the presence of his attorney. On January 18, 2002, this court filed its opinion, which affirmed the trial court. Defendant filed a timely petition for rehearing alleging defendant was entitled to an examination for substance abuse treatment and for consideration for rehabilitation treatment. We have granted said petition for rehearing and withdrawn our prior opinion. For the reasons that follow, we now affirm the defendant's conviction, vacate the sentence and remand this matter for resentencing.

## THE FACTS

At trial, Yvora Eberhardt testified that when she returned home from work on February 17, 1999, she discovered that her apartment had been burglarized. Her home had been ransacked and she immediately noticed that her stereo, video cassette recorder, compact discs and clothing were missing. She reported the incident to the police.

On March 11, 1999, Eberhardt parked her 1993 Chevrolet Lumina in a residential parking lot in the rear of her apartment building. The following morning, Eberhardt discovered that her car had been stolen.

Eberhardt testified that she kept a spare set of keys to the Lumina in her home. The spare set of keys also contained a spare "cutoff switch key," which disarmed the "cutoff switch," which was an anti-theft device located on the dashboard of the car. After the Lumina was stolen, Eberhardt realized for the first time that the spare set of keys was missing from her home.

Chicago police officer Jeffrey Creel testified that on March 16, 1999, while on patrol with his partner, Officer John Campbell, he observed a Chevrolet Lumina make a right-hand turn without using its turning signal. Campbell ran the vehicle's license plate number through the police computer system and learned that the car was stolen. The officers proceeded to follow the Lumina and after some time activated their vehicle's emergency lights and sirens to alert the driver to pull over.

The driver responded by accelerating and initiating a chase. The officers pursued the Lumina until it crashed into a fence a short while later. After crashing the car, Wallace exited the vehicle and ran. The officers exited their vehicle and caught Wallace after pursuing him on foot. Creel stated that the Lumina did not exhibit any of the outward signs of a stolen vehicle, such as a peeled steering column, broken windows or punched locks.

Creel testified that after he advised Wallace of his *Miranda* rights, he asked Wallace why he fled. Creel testified that Wallace said "he

took off because he knew the car was stolen." Creel later learned that Wallace had an outstanding warrant from traffic court seeking his arrest.

Creel testified that at no point did he ask Wallace to sign a written admission. Wallace's admission was never audio taped or videotaped. Creel testified that because possession of a stolen motor vehicle is a high-volume case, the officers were not required to make taped copies of Wallace's admission.

Eberhardt testified that on March 16, 1999, she was contacted by the police and informed that her car had been recovered. She went to the police pound to reclaim her vehicle. There, she found the missing set of spare keys to the Lumina in the ignition of the vehicle, and the "cutoff switch key" was in the "cutoff switch," which was located on the dashboard.

Eberhardt testified that she had never seen or met Wallace before. She stated that she never gave Wallace permission to use her car and never gave him the keys to her car.

Michael Hayes, a witness for the defense, testified that he and Wallace were friends who had known each other for 10 years and saw each other almost every day. Hayes testified that on March 12, 1999, Wallace rented the Lumina from a man named Mike. Hayes did not know Mike's last name or address. Hayes stated that Wallace agreed to rent the car from Mike for the weekend for $60. Hayes testified that Mike had keys to the Lumina and that there was no visible damage to the car when Wallace accepted the vehicle. Hayes said that Wallace paid for the car with cash. No written rental agreement was generated, and Wallace did not receive an insurance card or any other documents for the Lumina. Hayes received $10 because he served as the middleman for the transaction.

On September 28, 1999, the jury returned a guilty verdict. On October 29, 1999, Wallace filed a motion for a new trial, which was denied. The trial court sentenced Wallace to serve eight years' imprisonment on October 29, 1999. On December 3, 1999, Wallace filed a *pro se* motion for a reduction of sentence, which was denied on December 9, 1999. Wallace filed a timely notice of appeal on January 4, 2000.

## ANALYSIS

### I

Wallace contends the trial court erred when it allowed the State to impeach defense witness Michael Hayes with his prior silence. Specifically, Wallace argues that it was improper for the State to impeach Hayes with his failure to inform the authorities that Wallace had rented the Lumina.

The State argues the issue is waived because Wallace failed to raise the issue in his posttrial motion for a new trial. Wallace maintains, however, that the plain error rule applies because the evidence was closely balanced, citing Supreme Court Rule 615(a) (134 Ill. 2d R. 615(a)) and *People v. Mullen*, 141 Ill. 2d 394, 401 (1990), in support of his contention.

■ Ordinarily, a defendant must object to an error at trial and include the objection in a posttrial motion in order to preserve the issue for review on appeal. *People v. Enoch*, 122 Ill. 2d 176, 186 (1988). However, the plain error rule may be invoked in criminal cases when a defendant has not properly preserved an error for review, where the evidence is closely balanced, or where the error adversely affected the defendant's right to a fair trial. *Mullen*, 141 Ill. 2d at 401-02; *People v. Carlson*, 79 Ill. 2d 564, 576-77 (1980).

■ "The main purpose of the plain error rule, if the evidence is closely balanced, is to protect against the 'possibility that an innocent person may have been convicted due to some error which is obvious from the record, but not properly preserved' for appellate review. [Citation.] In cases where the evidence is closely balanced, the probability that a defendant's conviction was caused by even a minor trial error is greatly enhanced. Therefore, in those cases, the court will invoke the plain error rule so that it can determine whether an error, which was not objected to at trial and in post-trial motions, raises doubt as to the validity of the jury's verdict." *Mullen*, 141 Ill. 2d at 402, quoting *Carlson*, 79 Ill. 2d at 576.

■ Generally, silence has no probative value and testimony regarding a witness's silence must be excluded unless the failure to state a fact was "definitely and manifestly inconsistent" with the witness's trial testimony. *People v. McMullin*, 138 Ill. App. 3d 872, 877 (1985). A witness can be impeached with prior silence where it is shown that the witness had the opportunity to make an exculpatory statement and, under the circumstances, a person normally would have made the statement. *People v. Berry*, 264 Ill. App. 3d 773, 779 (1994); *People v. Conley*, 187 Ill. App. 3d 234, 244 (1989).

■ "[W]here a witness is a friend of the accused, and has had knowledge of the friend's arrest before trial, evidence of the witness' failure to give exculpatory information to the authorities is admissible to impeach an exculpatory story offered for the first time at trial. However, where the witness has not had sufficient notice, there must be evidence of other circumstances under which a reasonable person would have given exculpatory information to the authorities." *Conley*, 187 Ill. App. 3d at 245.

At trial, Hayes testified that Wallace rented the Lumina from

Mike on March 12, 1999. Wallace was subsequently arrested on March 16, 1999. Hayes learned of Wallace's arrest a few weeks later, when Wallace's lawyers found him on the street and informed him that Wallace had been arrested for driving a stolen Lumina. Hayes informed Wallace's lawyers of the rental agreement between Wallace and Mike, but Hayes never contacted the authorities.

The State argues that it satisfied the required evidentiary foundation to impeach Hayes and cites *Berry* in support of its position. *Berry* is distinguishable.

In *Berry*, the defendant was convicted of armed robbery and was sentenced to 10 years' imprisonment. On appeal, the defendant argued that the State improperly impeached his alibi witnesses with evidence of their failure to come forward and notify the authorities of the alibi.

The defendant allegedly robbed a Baskin Robbins. The owner, who was working at the store at the time of the robbery, identified the defendant in a lineup. The defendant's girlfriend and another woman testified that they were with the defendant at a party on the night of the robbery but both failed to alert the authorities of the defendant's alibi until months after the robbery occurred.

The *Berry* court held that the State satisfied the required evidentiary foundation to impeach the defendant's alibi witnesses. The court wrote, "[d]ue to the intimate relationship between defendant and [his girlfriend] and the fact that she knew months before trial of defendant's alibi yet failed to bring this fact to the attention of the police, no foundational problem exists that would have precluded her impeachment on these grounds." *Berry*, 264 Ill. App. 3d at 779.

Here, it is true that Hayes failed to inform the authorities of the exculpatory information that he possessed before the beginning of trial. However, Hayes did not sit idle as the witnesses in *Berry* did. Unlike the witnesses in *Berry*, Hayes did not wait before disclosing the exculpatory information. Hayes testified that he informed Wallace's attorneys of the exculpatory information that he possessed when he was informed that Wallace had been arrested.

Wallace's attorneys were officers of the court who had a duty to inform the State of all potential defense witnesses. On August 6, 1999, the defense filed an amended answer to the People's motion for pretrial discovery, where it listed Hayes as a potential witness at trial. The State failed to interview Hayes.

In *People v. Watson*, 94 Ill. App. 3d 550 (1981), the defendant was convicted of burglary, kidnaping, unlawful restraint and rape. The defendant allegedly kidnaped the victim and forced her into a car, where he raped her. The defendant's alibi witness testified that she and the defendant were dining together when the crime occurred and that she

did not become aware until some time later that the defendant had been charged with a crime that allegedly occurred while they were together.

The court held that it was improper for the prosecutor to argue that because the defendant's alibi witness did not inform the State of the alibi, the alibi witness was not credible. *Watson*, 94 Ill. App. 3d at 557. The court found that there was no showing that the witness had an opportunity to inform the State of the alibi in circumstances where a reasonable person would have stepped forward. The court held that there was no foundation for impeachment of the alibi witness. *Watson*, 94 Ill. App. 3d at 558.

In this case, we believe that there was no showing that Hayes had an opportunity to inform the State of Wallace's alibi in circumstances where a reasonable person would have stepped forward. Hayes was first informed of Wallace's arrest by Wallace's attorney. At that point Hayes gave the attorney the exculpatory information he possessed. We do not believe that a reasonable person would then have also called the authorities. Under these circumstances, where Hayes was already in contact with defense lawyers, a reasonable person would not be required to seek out the State and share this information with the State as well.

The State asserts that the plain error doctrine does not apply because the evidence was not closely balanced. We agree.

■ In this case, the evidence showed that the defendant led police on a high-speed chase in an attempt to evade arrest. After crashing the stolen Lumina, Wallace fled from the officers on foot. Once apprehended, Wallace admitted to the arresting officer that he ran because he knew the car was stolen.

In contrast, the evidence presented by Wallace was very weak. Wallace relies primarily on the car rental evidence. However, Hayes was a friend of the defendant, and the jury was free to disbelieve his testimony. Hayes testified that Wallace did not know the car was stolen because Wallace rented the vehicle from a man named Mike. Hayes allegedly made it possible for Wallace to rent the vehicle from Mike, yet implausibly, Hayes testified that he did not know Mike's last name or Mike's address, and no rental agreement was generated as a result of the arrangement.

We agree with the State, therefore, that the evidence was not closely balanced, and thus we will not apply the plain error doctrine.

## II

Wallace next argues that he was deprived of his constitutional right to confront a witness. Specifically, Wallace asserts that his sixth

amendment right to confront witnesses was violated when the trial court restricted his cross-examination of Officer Creel.

The State asserts that Wallace waived his right to raise the issue on appeal because he failed to raise it in his posttrial motion for a new trial or, in the alternative, that Wallace failed to properly preserve the issue by making an offer of proof at trial showing how the precluded questions would have illustrated Officer Creel's lack of credibility.

■ Generally, in order to preserve an issue concerning the trial court's preclusion of impeaching evidence at trial, the defendant must set forth an offer of proof at trial to establish on the record, for purposes of review, that the evidence he sought to introduce was positive and direct on the issue of bias or motive to testify falsely. *People v. Phillips*, 186 Ill. App. 3d 668, 678 (1989); *People v. Sanders*, 143 Ill. App. 3d 402, 407 (1986). Although formal offers of proof, where the proposed evidence or testimony is formally offered in a question and answer manner outside the presence of the jury, are generally required to preserve the issue of whether preclusion of the evidence was proper, an informal offer of proof, where counsel merely summarizes what the proposed evidence or testimony may show, may be sufficient to preserve the error if it is specific enough in nature and if it is not based merely on speculation or conjecture. *Hall v. Northwestern University Medical Clinics*, 152 Ill. App. 3d 716, 722 (1987); *People v. Brown*, 104 Ill. App. 3d 1110, 1119 (1982); *Tolefree v. March*, 99 Ill. App. 3d 1011, 1014 (1981). An offer of proof is sufficiently specific, therefore, if it adequately shows the court what the evidence would be, allowing a court of review to assess the prejudice allegedly inuring from the exclusion. *Phillips*, 186 Ill. App. 3d at 679; *Hall*, 152 Ill. App. 3d at 722.

■ Wallace failed to raise this issue in a timely filed posttrial motion and failed to make an offer of proof at trial. Wallace contends the plain error doctrine is applicable because the evidence was closely balanced and the alleged error is of such magnitude that it affects a substantial right.

As we have discussed earlier, the evidence in this case was not closely balanced. However, we recognize that the right to confront a witness, including the right to cross-examine a witness, is a fundamental right. *People v. Knight*, 323 Ill. App. 3d 1117, 1125 (2001), citing *Cruz v. New York*, 481 U.S. 186, 189, 95 L. Ed. 2d 162, 169, 107 S. Ct. 1714, 1717 (1987); U.S. Const., amends. VI, XIV; Ill. Const. 1970, art. I, § 8. In the instant case, we choose to resolve the issue due to the magnitude of the constitutional deprivation that is in question. See *Pointer v. Texas*, 380 U.S. 400, 403, 13 L. Ed. 2d 923, 926, 85 S. Ct. 1065, 1067 (1965) (accused's sixth amendment right to confront wit-

nesses against him is a fundamental right made obligatory on the State by the fourteenth amendment).

■ "Under a plain error analysis, the alleged mistakes must first be examined to determine whether errors occurred, and, if so, a determination must then be made as to whether the errors rose to the level of plain error. [Citation.] The Illinois Supreme Court has held that '[a] reviewing court will grant relief under this prong of the plain error rule only if the error is so fundamental to the integrity of the judicial process and so prejudicial to the defendant that the trial court could not cure the error by sustaining an objection or instructing the jury to disregard the error. [Citation.] Otherwise, defense counsel could obtain a reversal *** simply by failing to object and by design depriving the trial court of the opportunity to prevent or correct the error.' [Citation.] Where the error is so damaging that the prejudicial effect to the defendant cannot be erased by sustaining an objection or instructing the jury to disregard the error, 'a court of review will grant relief if the trial error is so prejudicial that real justice has been denied or the verdict of the jury may have resulted from such error.' [Citations.]" *Knight*, 323 Ill. App. 3d at 1124-25.

■ The United States Supreme Court has held that a criminal defendant has the right to confront the witnesses against him, including the right to cross-examine those witnesses. *Cruz v. New York*, 481 U.S. 186, 189, 95 L. Ed. 2d 162, 169, 107 S. Ct. 1714, 1717 (1987); U.S. Const., amends. VI, XIV; Ill. Const. 1970, art. I, § 8. "A trial court may not deprive a defendant of the right to question witnesses; however, it may limit the scope of cross-examination." *People v. Criss*, 294 Ill. App. 3d 276, 279 (1998), citing *People v. Frieberg*, 147 Ill. 2d 326, 357 (1992). Keeping in mind that a trial court is granted broad discretion, the appellate court is to determine whether the lower court abused its discretion in deciding to exclude certain testimony. *People v. Enis*, 139 Ill. 2d 264, 282-83 (1990); *Criss*, 294 Ill. App. 3d at 279-80.

■ The constitutional guarantee and the common law right are separate, and the discretionary authority of the trial court to restrict the scope of cross-examination comes into play after the court has permitted, as a matter of right, sufficient cross-examination to satisfy the confrontation clause. *People v. Averhart*, 311 Ill. App. 3d 492, 497 (1999); *People v. Rufus*, 104 Ill. App. 3d 467, 473 (1982). "The test is whether limitation on cross-examination created a substantial danger of prejudice by denying defendant his right to test the truth of the testimony. [Citation.] To determine the constitutional sufficiency of cross-examination, a court looks not to what a defendant has been prohibited from doing, but to what he has been allowed to do. [Citation.] If the entire record shows that the jury has been made aware of

adequate factors concerning relevant areas of impeachment of a witness, no constitutional question arises merely because defendant has been prohibited on cross-examination from pursuing other areas of inquiry." *Averhart,* 311 Ill. App. 3d at 497.

In this case, Officer Creel testified that Wallace admitted to him that he knew the car was stolen. Wallace's admission was never recorded. The defense theory of the case was that Wallace did not know the car was stolen because he rented the vehicle from a man named Mike. Wallace argues that the trial court did not allow him to test the reliability of Creel's account of Wallace's admission.

At trial, this colloquy occurred during defense counsel's cross-examination of Creel:

"Q. You stated that while in the back of the car he made a statement to you, is that correct?

A. That is correct.

Q. That he knew the car was stolen?

A. That's correct.

Q. At no point did you ask him to write that down, is that correct?

A. No, I didn't.

Q. You didn't do that at the scene and you didn't do that at the station, is that correct?

A. That is correct.

\* \* \*

Q. And he was not asked to say this on audiotape or on videotape either, is that correct?

A. We don't do that in this kind of case.

Q. What kind of case is that, sir?

A. This is possession of a stolen motor vehicle.... This is a high volume case. It doesn't require that as far as our general orders.

Q. So your testimony is that the case is not as important as another case?

MR. VILLASENOR [Assistant State's Attorney]: Objection.

THE COURT: Sustained. Move on to something else, please."

On redirect, Creel again testified that possession of a stolen motor vehicle was considered a high-volume case. During defense counsel's re-cross-examination of Creel, the following dialogue occurred:

"Q. Sir, what do you mean by high-volume case?

A. A high number of stolen cars that are recovered in the 11th District.

Q. Are there also a high number of murders in the City of Chicago?

MR. VILLASENOR: Objection[.]

THE COURT: I'm not sure of the point, but overruled.

Q. Are there also a large number of murders that are committed in the City of Chicago?

A. Yes, there are.

Q. Would you not take a statement because there are a lot of murders in the case?

MR. VILLASENOR: Objection, Judge.

THE COURT: I think you can save it for argument. Sustained. Next question, please."

When the trial court restricted the cross-examination of Creel, it denied Wallace the opportunity to test the reliability of Creel's testimony. The State relied on the testimony of Creel to prove the knowledge element of the crime. Creel was the only witness who testified that Wallace admitted to knowing the vehicle was stolen. The defense should have been allowed to develop matters that would have reasonably shown the bias, motive or willingness of Creel to testify. The defense should have been permitted to develop its theory that in high-volume cases such as murder, an admission is usually recorded, but in this high-volume case, the admission was not recorded because it never occurred. The trial court's decision to keep this evidence from the jury was not justified as an exercise of sound discretion and constituted error.

■ The test for harmless constitutional error is whether the error was harmless beyond a reasonable doubt. Three approaches for measuring constitutional error are: (1) focusing on the error to determine whether it might have contributed to the conviction, (2) examining the other evidence in the case to see if overwhelming evidence supports the conviction, and (3) determining whether the evidence is cumulative or merely duplicates properly admitted evidence. *People v. Wilkerson*, 87 Ill. 2d 151, 157 (1981).

■ The error here was harmless because the evidence in this case overwhelmingly supports the conviction. When Wallace was initially stopped by the police, he led them on a car chase and was only apprehended after a foot chase. Wallace argues that he fled because he had an outstanding warrant at the time of his arrest, but the warrant was for a traffic ticket and the jury was free to infer that he fled because he knew the Lumina was stolen. Hayes, a friend of the defendant, testified that Wallace rented the Lumina from a man named Mike, but Hayes could not recall Mike's last name or where he lived even though Hayes set up the deal. There was no written rental agreement for the Lumina, and Wallace had no documents such as registration or an insurance card for the Lumina.

## III

■ Wallace also alleges that he was denied a fair trial as a result

of prosecutorial comments made during closing argument. Wallace contends that during closing arguments the State improperly asked the jurors to consider the devastating impact of losing a car to theft. Wallace argues that this argument was irrelevant and inflammatory.

The State responds that Wallace has waived this issue because he failed to object to the remarks at trial and also failed to raise the issue in his posttrial motion. Wallace asserts the plain error doctrine should be invoked.

We do not believe the challenged prosecutorial comments rose to the level of plain error. The evidence at trial was not closely balanced. Further, even if the prosecutor's closing argument was improper, which the State is not conceding, it did not affect a substantial right of the defendant. *People v. Williams*, 181 Ill. 2d 297, 315 (1998); *People v. Dibble*, 317 Ill. App. 3d 252, 259 (2000). The issue is waived.

## IV

Wallace also contends that the trial court erred when it failed to order a substance abuse evaluation pursuant to TASC before sentencing him to eight years' imprisonment.

The State responds that Wallace waived review of this issue because he failed to raise the issue in his motion to reduce sentence pursuant to section 5—8—1(c) of the Unified Code of Corrections (730 ILCS 5/5—8—1(c) (West 1998)) and *People v. Reed*, 177 Ill. 2d 389, 395 (1997). Wallace contends this issue should be reviewed under the plain error doctrine. Since the defendant's substantial rights are affected, this issue may be considered under the plain error doctrine. See *People v. Hamilton*, 155 Ill. App. 3d 555, 558 (1987).

The purpose of TASC is to prevent drug abuse and encourage treatment and rehabilitation by allowing eligible defendants to elect rehabilitative treatment instead of traditional sentencing. Under TASC, "[i]f a court has reason to believe that an individual who is charged with or convicted of a crime suffers from alcoholism or other drug addiction and the court finds that he is eligible to make the election provided for under Section 40—5, the court shall advise him that he may be placed on probation if he elects to submit to treatment and is accepted for treatment by a designated program." 20 ILCS 301/40—10(a) (West 1994). Furthermore, "[i]f the individual elects to undergo treatment or is certified for treatment, the court shall order an examination by a designated program to determine whether he suffers from alcoholism or other drug addiction and is likely to be rehabilitated through treatment." 20 ILCS 301/40—10(b) (West 1994).

In *People v. Brown*, 267 Ill. App. 3d 482 (1994), the defendant was convicted of vehicular invasion for his participation in a smash and

grab robbery. On appeal, the defendant asserted that the trial court erred when it failed to order a substance abuse evaluation to determine his eligibility for drug treatment under the now-repealed Illinois Alcoholism and Other Drug Dependency Act (Act) (20 ILCS 305/1—101 *et seq.* (West 1992)). In response, the State maintained that defense counsel's representations at trial were insufficient to trigger an evaluation under the Act.

Under the Act, the trial court was required to advise a defendant of his option to elect treatment once the court was given a reason to believe an otherwise eligible defendant was an addict or alcoholic, and if the defendant chose to undergo treatment, the Act required the court to order a substance abuse evaluation. *Brown*, 267 Ill. App. 3d at 485.

The *Brown* court found that defense counsel's representations to the trial court during the sentencing hearing were sufficient to provide the court with reason to believe that the defendant was an addict, and, as such, the trial court erred when it did not order a substance abuse evaluation. Defense counsel's representations to the trial court are provided:

> " 'It has to do with [defendant's] alcohol and drug history. And after talking with [defendant, he] has indicated that he was somewhat ashamed of his prior drug use and he informed me in fact at the time of the incident he had been drinking regularly and heavily, and had been using cocaine on a daily basis in addition to smoking marijuana. And based upon that, your honor, we would be asking that [defendant] be examined under [the Act] for drug treatment.' " *Brown*, 267 Ill. App. 3d at 484.

Here, Wallace's presentence investigation (PSI) revealed that the defendant thought that he had a problem with alcohol, drank three times a week, had been arrested twice for driving under the influence, did not set limits on his drinking and was under the influence of alcohol when he was arrested on March 16, 1999. The PSI also stated that Wallace used marijuana every day and was under the influence of the drug when he was arrested. In addition, during a period from October 1977 to August 1998, Wallace used cocaine every day. However, after August of 1998, Wallace only used cocaine twice a week. Wallace also admitted to smoking and snorting cocaine the day that he was arrested.

At Wallace's sentencing hearing, Wallace's counsel made the following remarks to the trial court:

> "The PSI is rather specific on when he started using specific drugs, alcohol, cocaine when he was 15, PCP when he was 15. PSI points to an attempt and obviously a failed attempt, to deal with

that situation. But at least an attempt, Judge. Mr. Wallace today asked me after a conversation with the probation officer who prepared the PSI about TASC, and he wanted to ask the court about TASC, and if he had any option at this point regarding TASC. We are asking, Judge, that you sentence him to the minimum of penitentiary time on the case."

We find that the PSI and defense counsel's representations to the trial court were sufficient to provide the court with a reason to believe that Wallace was addicted to drugs and alcohol. Subsequently, the trial court erred when it did not order a substance abuse evaluation.

The State also argues that the trial court correctly determined that Wallace was ineligible to participate in TASC pursuant to section 40—5(7) of the Alcoholism and Other Drug Abuse and Dependency Act (20 ILCS 301/40—5(7) (West 1998)). According to section 40—5(7), an addict or alcoholic who is charged with or convicted of a crime may elect treatment in a licensed program such as TASC unless "the person has been *convicted* of residential burglary and has a record of one or more felony convictions." (Emphasis added.) 20 ILCS 301/40—5(7) (West 1998).

The record reveals that Wallace was *adjudicated delinquent* of residential burglary in 1989 and also possessed a record containing more than two felony convictions. However, juvenile delinquency adjudications are not considered convictions. *People v. Rankin*, 297 Ill. App. 3d 818, 824-25 (1998). Consequently, Wallace is eligible to participate in TASC. Thus, we vacate Wallace's sentence and remand this cause for resentencing.

This decision does not reach the merits of whether Wallace may be entitled to alternative sentencing in lieu of imprisonment. "Ordering a substance abuse examination to determine whether or not a defendant is an addict does not automatically compel a trial court to impose a sentence of probation and treatment." *Brown*, 267 Ill. App. 3d at 486, citing *People v. Saddler*, 231 Ill. App. 3d 544, 549 (1992).

## V

■ Wallace next contends that section 5—5—3(c)(8) (730 ILCS 5/5—5—3(c)(8) (West 1998)) is unconstitutional under *Apprendi v. New Jersey*, 530 U.S. 466, 147 L. Ed. 2d 435, 120 S. Ct. 2348 (2000).

The trial court found Wallace guilty of the aggravated possession of a stolen motor vehicle, which is a Class 1 felony pursuant to section 4—103.2(c) (625 ILCS 5/4—103.2(c) (West 1998)). A conviction for a Class 1 felony exposes a defendant to a term of imprisonment of not less than 4 years and not more than 15 years. 730 ILCS 5/5—8—1(a)(4) (West 1998). At Wallace's sentencing hearing, the trial court determined that it was required to sentence Wallace as a Class X of-

fender due to Wallace's prior convictions. The trial court found that Wallace was eligible for Class X sentencing due to a 1993 conviction for possession of a stolen motor vehicle and a 1995 conviction for burglary. The sentencing range for a Class X offense is a term of imprisonment of not less than 6 years and not more than 30 years. 730 ILCS 5/5—8—1(a)(3) (West 1998). The trial court sentenced Wallace to eight years' imprisonment.

In *People v. Lathon*, 317 Ill. App. 3d 573 (2000), the defendant was convicted of attempted residential burglary and received mandatory sentencing enhancement based on prior felony convictions pursuant to section 5—5—3(c)(8) (730 ILCS 5/5—5—3(c)(8) (West 1998)). The defendant argued that section 5—5—3(c)(8) was unconstitutional under *Apprendi*.

The *Lathon* court rejected the defendant's arguments and found section 5—5—3(c)(8) constitutional under *Apprendi*. The court wrote, "[t]he *Apprendi* Court not only endorsed the recidivism exception, but articulated reasons for the recidivism exception, including the fact that procedural safeguards enhance the validity of any prior conviction, recidivism is not an essential element of the underlying criminal offense and recidivism does not relate to the commission of the underlying offense." *Lathon*, 317 Ill. App. 3d at 585.

In *Apprendi* the Court wrote:

> "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi*, 530 U.S. at 490, 147 L. Ed. 2d at 455, 120 S. Ct. at 2362-63.

Here, Wallace's sentence was increased as a result of prior convictions. The Court in *Apprendi* specifically made an exemption for recidivism. As such, Wallace's sentence was proper.

## VI

 Wallace also contends that his sentence should be vacated and his case remanded because his attorney was not present when his *pro se* motion for a reduction in sentence was before the court. Wallace urges this court to rule that he was denied his sixth amendment right to counsel when the trial court ruled on his *pro se* motion without the presence of his attorney. We disagree.

In *People v. Handy*, 278 Ill. App. 3d 829 (1996), the defendant pled guilty to vehicular invasion. The defendant filed a *pro se* motion to reduce his sentence but was still represented by counsel. The trial court ignored the defendant's *pro se* motion. On review, the defendant argued that the trial court improperly ignored the motion because it was properly before the court.

The *Handy* court held that the trial court correctly ignored the motion because the defendant was represented by counsel at all times and did not have the authority to file *pro se* motions. The *Handy* court wrote that the "court not only did not *need* to consider [the motions], it should *not* have considered [the motions]. Defendant had the right to proceed *either pro se or* through counsel; he had no right to some sort of hybrid representation, whereby he would receive the services of counsel and still be permitted to file *pro se* motions." (Emphasis in original.) *Handy*, 278 Ill. App. 3d at 836.

In *People v. Pondexter*, 214 Ill. App. 3d 79 (1991), the court also addressed this issue and ruled as follows:

"An accused has either the right to have counsel represent him or the right to represent himself; however, a defendant has no right to both self-representation and the assistance of counsel. An election between these two rights must be made at the proper time and in the proper manner. [Citation.] It is obvious that both of these rights cannot be exercised at the same time. [Citation.]

Once this election is made, the roles of attorney and client are defined. Defendant retains the right to make decisions involving 'fundamental rights,' while those strategic matters involving 'the superior ability of counsel' are left to the attorney. [Citation.] Decisions involving 'fundamental rights' include the decision whether to plead guilty or not guilty, whether to waive jury trial, whether to testify, and whether to appeal. [Citation.] On the other hand, if a defendant retains counsel, that counsel has control over the day-to-day conduct of the defense. He has the responsibility to determine when and whether to object, what witnesses to call and what defenses to develop. These decisions, practically speaking, must be done without consulting the client. [Citation.]

\* \* \*

A *pro se* defendant is entitled to retain control over the case he wishes to present to the jury and participation by 'standby counsel' must not be allowed to destroy the jury's perception that the defendant is representing himself. [Citation.] However, a defendant is not entitled to a 'hybrid trial' where he alternates between proceeding *pro se* and being represented by counsel. [Citation.] The accused has no such right to both representation of counsel and to also conduct portions of the proceedings on his own. [Citation.]" *Pondexter*, 214 Ill. App. 3d at 87-88.

In this case, Wallace did not have the right to a hybrid form of representation. Wallace filed a *pro se* motion for a reduction in sentence while still represented by counsel and therefore was not entitled to have an attorney present during the hearing on the motion. As such, the decision of the trial court was proper.

## CONCLUSION

For the foregoing reasons, we affirm the defendant's conviction, vacate the sentence and remand this matter for resentencing.

Affirmed in part and vacated in part; cause remanded.

CAMPBELL, P.J., concurs.

JUSTICE QUINN, dissenting:

I concur with the majority's affirmance of defendant's conviction. I dissent as to the majority's vacating the defendant's sentence because of the trial court's failure to order a TASC evaluation. This issue has been waived.

In pertinent part, section 5—8—1(c) provides:

"A motion to reduce a sentence may be made, or the court may reduce a sentence without motion, within 30 days after the sentence is imposed. A defendant's challenge to the correctness of a sentence or to any aspect of the sentencing hearing shall be made by a written motion filed within 30 days following the imposition of sentence. However, the court may not increase a sentence once it is imposed." 730 ILCS 5/5—8—1(c) (West 1998).

*People v. Reed*, 177 Ill. 2d 389 (1997), held that "the legislative purpose behind section 5—8—1(c) was to require sentencing issues be raised in the trial court in order to preserve those issues for appellate review." *Reed*, 177 Ill. 2d at 393.

"Requiring a written post-sentencing motion will allow the trial court the opportunity to review a defendant's contention of sentencing error and save the delay and expense inherent in appeal if they are meritorious. Such a motion also focuses the attention of the trial court upon a defendant's alleged errors and gives the appellate court the benefit of the trial court's reasoned judgment on those issues." *Reed*, 177 Ill. 2d at 394.

In the instant case, defendant filed a motion to reduce sentence. In that motion, defendant asked the trial court to reduce the number of years defendant was to serve in prison. Defendant did not ask to be evaluated for TASC or to be sentenced to TASC. If the failure of the trial court to order that defendant be evaluated for TASC was an error, any such error was waived by defendant's failure to raise this error in his motion to reduce sentence. *Reed*, 177 Ill. 2d at 394.

The majority rely on *People v. Hamilton*, 155 Ill. App. 3d 555, 558 (1987), for their holding that this issue may be reviewed under the plain error doctrine. *Hamilton* was decided six years before the language of section 5—8—1(c) was amended to make a postsentencing

motion mandatory and 10 years before the holding in *Reed*. Our supreme court has explained that "plain error" exists only when the essential fairness of a trial has been undermined. This "occurs only in situations which 'reveal breakdowns in the adversary system,' as distinguished from 'typical trial mistakes.' [Citation.]" *People v. Keene*, 169 Ill. 2d 1, 17 (1995). The plain error doctrine does not apply to the facts of this case.

More importantly, I believe that defendant's motion to reduce sentence clearly shows that he does not want to be sentenced to TASC. This is not the first time in this case that the trial court was informed that defendant did not want to be evaluated or sentenced to TASC. The majority quote defendant's trial counsel at the sentencing hearing. Defendant's attorney first commented on defendant's prior failure to comply with a prior sentence of probation with a requirement that defendant comply with TASC. Counsel then said defendant asked him (defense counsel) "about TASC, and he wanted to ask the court about TASC. We are asking, Judge, that you sentence him to the minimum of penitentiary time on the case." This is an unequivocal request that defendant be sentenced to a minimum prison sentence and is not a request that defendant be evaluated for TASC. This is very different than the request by defense counsel in *People v. Brown*, 267 Ill. App. 3d 482, 484 (1994): " 'we would be asking that [defendant] be examined under [the Act] for drug treatment.' "

Any doubt regarding whether it was defendant's personal desire to not be evaluated for TASC was dispelled when defendant filed a *pro se* motion to reduce sentence when he again asked that he be sentenced to a shorter prison sentence and did not ask to be evaluated or sentenced to TASC. The only person connected to this case who wants defendant to be evaluated for TASC is defendant's appellate counsel. This is not a minor point. Our supreme court in *Reed* made it very clear that sentencing issues must be brought to the attention of the trial court before they can be raised on appeal. The instant case is an excellent example of the wisdom of that decision. We are vacating a defendant's sentence and remanding the case to the trial court with an order that defendant be evaluated for participation in a program that defendant's trial counsel does not believe defendant belongs in, that the trial court does not believe that defendant belongs in, and in which defendant himself has clearly said that he does not wish to participate. This decision does not merely place an unwarranted and unnecessary burden on an overworked trial court, it also requires that the scarce resources of TASC be expended upon a person who does not want them.